IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

VICTORIA KLEIN, et al.,              §
                                     §
            Plaintiffs,              §
                                     §  Civil Action No. 7:03-CV-102-D
VS.                                  §
                                     §
O'NEAL, INC., d/b/a O'NEAL,          §
JONES & FELDMAN                      §
PHARMACEUTICALS, et al.,             §
                                     §
            Defendants.              §

MEMORANDUM OPINION
AND ORDER

        In this class action alleging personal injury and death claims
arising from the manufacture and distribution of E-Ferol Aqueous
Solution ("E-Ferol"), a pharmaceutical product administered
intravenously to premature infants between November 1983 and April
1984, defendants O'Neal, Inc. d/b/a O'Neal, Jones & Feldman
Pharmaceuticals ("OJF"), CVS Revco D.S., Inc. ("CVS"), and Retrac,
Inc. ("Retrac") move for partial summary judgment. They maintain
that all wrongful death and survival act claims brought on behalf
of individuals who died before May 23, 2001 (i.e., two years before
this suit was filed), and all claims (whether from personal injury
or death) arising in Iowa or Tennessee, are time-barred.
Plaintiffs rely on the defense of fraudulent concealment to avoid
the time bar. For the reasons that follow, the court grants the
motion in part and denies it in part. The court also raises *sua
sponte* that the class certification decision should be
reconsidered, and it directs the parties to submit supplemental

briefing on that question.

I

At the time E-Ferol was administered, Retrac was a wholly owned subsidiary of CVS and was doing business as Carter-Glogau Laboratories ("Carter-Glogau"). Carter-Glogau manufactured E-Ferol for distribution by OJF as a vitamin E solution for intravenous administration to premature infants. Marketed as an agent to combat retrolental fibroplasia——a disease that causes impaired vision or permanent blindness in premature infants——it was never tested for safety, and it was falsely represented as being "FDA Approved." Many infants who received the drug died or suffered serious health complications, and the drug was recalled in April 1984. Retrac d/b/a Carter-Glogau and OJF were later convicted of multiple federal crimes, including, *inter alia,* unlawful introduction of a drug that was not approved by the Food and Drug Administration ("FDA"), with the intent to defraud or mislead. *See United States v. Hiland,* 909 F.2d 1114, 1119 (8th Cir. 1990) (affirming convictions). The plaintiff class consists of infants who were administered E-Ferol, as well as the "parents, spouses, children, guardians, and legal representatives . . . with direct or derivative claims." *Klein v. O'Neal, Inc.,* 222 F.R.D. 564, 566 (N.D. Tex. 2004) (Buchmeyer, J.) (certifying class) ("*Klein I*").

Plaintiffs filed this action in May 2003, alleging claims for negligence, breach of express warranty, breach of implied warranty,

- 2 -

misrepresentation, and products liability. Defendants maintain that all wrongful death and survival act claims brought on behalf of individuals who died before May 23, 2001 (i.e., two years before this suit was filed), and all claims (whether from personal injury or death) arising in Iowa or Tennessee, are time-barred. In an August 9, 2007 memorandum opinion and order, the court continued consideration of defendants' motion for summary judgment so that plaintiffs could conduct discovery concerning fraudulent concealment. *Klein v. O'Neal, Inc.*, No. 7:03-CV-102-D, slip op. at 1 (N.D. Tex. Aug. 9, 2007). This discovery has been completed, and the parties have filed supplemental briefing.[1]

II

Under Texas law, lawsuits based on an injury that resulted in death must be brought within two years of the date of death. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(b) (Vernon 2002). This applies to all such claims, regardless whether they arise inside or outside the state. Tex. Civ. Prac. & Rem. Code Ann. § 71.031(a)(2) (Vernon Supp. 2007); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that federal court sitting in

---

[1]Defendants move to strike certain summary judgment evidence. Because the court has not relied on this evidence in deciding defendants' motion, it denies the motion as moot. Plaintiffs move for leave to supplement the summary judgment record. Because the proffered evidence would not affect the court's analysis, the motion is denied as moot.

diversity applies forum state's choice-of-law rules).[2]

Accordingly, all claims in this case that are based on deaths occurring before May 23, 2001 are time-barred, unless the limitations period is tolled.

Plaintiffs rely on the defense of fraudulent concealment to avoid the limitations bar.[3] Under Texas law, "[o]nce the defense of limitations is conclusively established, and the plaintiff resists summary judgment by asserting fraudulent concealment, the burden is on the plaintiff to raise a fact issue on each element of fraudulent concealment." *Malone v. Sewell*, 168 S.W.3d 243, 251 (Tex. App. 2005, pet. denied) (citing *Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994)).[4] Because plaintiffs will have

---

[2]Plaintiffs argue that a statute of limitations is "substantive law" for choice-of-law purposes, and that it therefore cannot govern the claims in this case that arise outside the state of Texas. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 818 (1985) (imposing constitutional restrictions on forum state's right to impose its own substantive law on claims arising outside state). This argument is foreclosed by Supreme Court precedent and does not warrant further discussion. *See Sun Oil Co. v. Wortman,* 486 U.S. 717, 722, 727-28 (1988) (holding that statute of limitations is "procedural" for choice-of-law purposes—even though it is substantive for *Erie* purposes—and reaffirming "long and repeated[ ]" holding that "the Constitution does not bar application of the forum State's statute of limitations to claims that in their substance are and must be governed by the law of a different State.").

[3]They also briefly invoke the "discovery rule," but this rule does not apply to wrongful death and survival act claims. *See Moreno v. Sterling Drug,* 787 S.W.2d 348, 349 (Tex. 1998).

[4]The parties do not dispute that Texas law governs the application of fraudulent concealment to claims governed by the Texas statute of limitations.

the burden at trial of proving fraudulent concealment, defendants can obtain summary judgment by pointing the court to the absence of evidence to support this defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once defendants do so, plaintiffs must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for plaintiffs. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Plaintiffs' failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmoving parties (here, plaintiffs) fail to meet this burden. *Little*, 37 F.3d at 1076.

III

"[W]hen a defendant has fraudulently concealed the facts forming the basis of the plaintiff's claim, limitations does not begin to run until the claimant, using reasonable diligence, discovered or should have discovered the injury." *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 750 (Tex. 1999). This is known as the doctrine of "fraudulent concealment," and it rests on the doctrine of equitable estoppel. *Malone*, 168 S.W.3d at 251 (citing *Mitchell Energy Corp. v.*

*Bartlett*, 958 S.W.2d 430, 439 (Tex. App. 1997, pet. denied)). Fraudulent concealment is based on the principle "that fraud vitiates whatever it touches." *Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex. 1983).

> [A] party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations. To reward a wrongdoer for his own fraudulent contrivance would make the statute a means of encouraging rather than preventing fraud.

*Id.*

"The gist of fraudulent concealment is the defendant's active suppression of the truth or failure to disclose when the defendant is under a duty to disclose." *Mitchell,* 958 S.W.2d at 439. It "requires actual knowledge by the defendant that a wrong has occurred and a fixed purpose to conceal the facts necessary for the plaintiff to know that it has a cause of action." *Vial v. Gas Solutions, Ltd.*, 187 S.W.3d 220, 230 (Tex. App. 2006, no pet.) (internal quotation marks omitted). "The elements of fraudulent concealment are: (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception." *Malone*, 168 S.W.3d at 251 (citing *Mitchell*, 958 S.W.2d at 439). A defendant may conceal facts either by "active misrepresentation" or "passive silence." *Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 890

(Tex.App. 1997, pet. denied). A passive failure to disclose a fact is fraudulent "only if the defendant has a duty to disclose that fact." *Trustees of Nw. Laundry & Dry Cleaners Health & Welfare Trust Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994); *see also Mitchell,* 958 S.W.2d at 439. But "affirmative misrepresentations can support a fraudulent concealment defense . . . even in the absence of a duty to disclose." *Santanna,* 954 S.W.2d at 891. The party asserting the fraudulent concealment defense bears the burden of showing that the defendant was under a duty to make a disclosure. *Nichols v. Smith,* 507 S.W.2d 518, 521 (Tex. 1974).

## IV

### A

For purposes of defendants' motion for partial summary judgment, there is no dispute that, when defendants distributed the product, they knowingly misrepresented E-Ferol as safe and effective for intravenous use in premature infants. Defendants maintain, however, that these misrepresentations are insufficient to establish fraudulent concealment because they are not distinct from the underlying tort. The court disagrees.

Where the underlying tort involves fraud, the underlying fraud itself is sufficient to toll the limitations statute.[3] *See Ruebeck v. Hunt,* 176 S.W.2d 738, 739-40 (Tex. 1944) (tolling limitations

---

[3]If fraud is not an element of the underlying tort (e.g., the products liability claim), then defendants' fraud necessarily is distinct from that tort.

period based solely on underlying tort of fraud) ("It is the well-settled rule in this State that fraud prevents the running of the statute of limitations until it is discovered, or by the exercise of reasonable diligence it might have been discovered."); *see also Computer Assocs. Int'l Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex. 1996) ("[W]here fraud is alleged, we have granted the claimant the benefit of deferring the cause of action until the claimant discovered or should have discovered the fraud." (citing *Ruebeck,* 176 S.W.2d at 739)). In *Hobson v. Wilson,* 737 F.2d 1 (D.C. Cir. 1984), a case on which defendants rely, the court explained:

> [the law] distinguishes between acts that are self-concealing (such as frauds) and acts where, absent a subsequent act of concealment, only the perpetrator, but not the fact that a cause of action might exist, would be unknown (such as a burglary). In the former case, concealment is established by the nature of the act [and the statute is tolled immediately]; in the latter case, additional acts of concealment are required to trigger the tolling doctrine.

*Id.* at 33.[4]

---

[4]In their final reply brief, defendants cite *Malone,* 168 S.W.3d at 251, but their reliance is misplaced. In *Malone* the court held that there was no fraudulent concealment because the defendant had "asked [plaintiff] for assurances that she would not sue her," which was "the very opposite of . . . concealment." It did not question the principle that an underlying tort of fraud can be sufficient to toll the limitations statute. *See id.* Defendants' reliance on *Advent Trust Co. v. Hyder,* 12 S.W.3d 534 (Tex. App. 1999, pet. denied), is also misplaced. *Advent Trust* merely acknowledged that the existence of underlying fraud did not itself toll the limitations period. *See id.* at 541-42. A

As discussed more fully below, a jury could reasonably infer that defendants' representations concerning the safety of E-Ferol prevented many physicians from suspecting that the deaths of these premature infants was due to the drug (as opposed to natural causes), which, in turn, prevented their patients' parents from suspecting the same. Defendants' deception thus concealed not "only the perpetrator," but the very "fact that a cause of action might exist." *Hobson,* 737 F.2d at 33. Accordingly, the court concludes that a separate act of concealment was not necessary to toll the limitations period.[5]

B

Defendants also maintain that, at the time the statements were made, they lacked the requisite "actual knowledge" of the alleged wrong. *See Vial,* 187 S.W.3d at 229 ("Fraudulent concealment requires actual knowledge by the defendant that a wrong has occurred[.]"). They aver that such knowledge requires specific awareness of plaintiffs' identities and injuries. The court disagrees.

---

plaintiff must also show, for example, that he reasonably relied on the fraud. *Id.*

[5]This same reasoning disposes of defendants' argument that the facts that they concealed were immaterial. Defendants' misrepresentations prevented physicians from suspecting that E-Ferol caused the infants' illnesses or deaths, which, in turn, prevented parents from discovering that they had a cause of action. The facts were clearly material.

Fraudulent concealment is an equitable doctrine based on the premise that "fraud vitiates whatever it touches." *Borderlon,* 661 S.W.2d at 909. The defense is established where a defendant knows it has committed a wrong, intends to conceal that wrong, and successfully does so. *See Shah v. Moss,* 67 S.W.3d 836, 841 (Tex. 2001). In some circumstances, a defendant who knows he has committed a wrong will necessarily know the identity of the person harmed. But in the typical mass tort case, it would be virtually impossible for a defendant to know the identity of each individual who has been harmed. To require such knowledge would essentially eliminate the availability of the fraudulent concealment defense against a limitations defense in a mass tort lawsuit. Texas law does not support this result. *See Borderlon,* 661 S.W.2d at 909. ("[A] party will not be permitted to avail himself of the protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations. To reward a wrongdoer for his own fraudulent contrivance would make the statute a means of encouraging rather than preventing fraud.").

Defendants rely on *Bridges v. Metabolife International, Inc.,* 119 Fed. Appx. 660 (5th Cir. 2005), an unpublished Fifth Circuit decision that is not precedential except in limited circumstances not present here. *See* 5th Cir. R. 47.5. In relevant part, *Bridges* addressed the question whether fraudulent concealment tolled the

Texas statute of limitations that otherwise barred the plaintiff's claim against the defendant, Metabolife International, Inc. ("Metabolife"), a marketer of a nutritional supplement. To decide this question, the panel addressed whether Metabolife had a duty to disclose product safety information that it had not disclosed until years after the plaintiff had suffered a stroke from using the product. *Id.* at 663.

The plaintiff argued that because Metabolife had voluntarily disclosed certain information to government agencies and had made representations to the public, it had a duty to make full and accurate disclosures to the public as information became available. He maintained that Metabolife's failure to make full and accurate disclosures prevented him from discovering his cause of action within the limitations period. The panel disagreed. It concluded that the plaintiff did not meet the first prong of fraudulent concealment because he did not demonstrate "that Metabolife had actual knowledge of his injury." *Id.* It then held that the plaintiff had failed to meet his burden of showing that Metabolife owed a fiduciary duty to him, which would have imposed on it a duty to fully and honestly disclose. *Id.* Without a duty to disclose, mere concealment was not fraudulent concealment for purposes of tolling the statute of limitations. *Id.* at 663-64.

Defendants seize on the first statement—that Metabolife lacked "actual knowledge of [the plaintiff's] injury"—to contend

that they are entitled to summary judgment on the same basis. But even if this statement should be viewed as a holding that is independent of the second that follows, this court must respectfully decline to follow it in this *Erie* context because it misstates Texas law. Earlier in the opinion, the *Bridges* panel correctly stated that "[t]o show entitlement to the estoppel effect, the plaintiff must show: (1) the defendant had actual knowledge of *the wrong* . . . ." *Id.* at 663 (emphasis added) (quoting *Casey v. Methodist Hosp.,* 907 S.W.2d 898, 904 (Tex. App. 1995)). In other words, it is the defendant's actual knowledge of *the wrong* that controls, not the defendant's actual knowledge of *the plaintiff's injury*. In fact, all three components of the fraudulent concealment test are formulated in terms of "the wrong," not the plaintiff's injury. *See Casey*, 907 S.W.2d at 903. Under Texas law, it is sufficient that the defendant knew it has wronged a person or group of persons, regardless whether it has identified the individuals involved.[6]

C

The court also rejects defendants' contention that, because their misrepresentations were made to third parties (physicians and hospitals), plaintiffs cannot establish their "reliance" on these

_____

[6]Defendants also cite *Cantrell v. Wyeth*, 2003 WL 22251079 (N.D. Tex. Sept. 19, 2003) (Fish, C.J.). In the court's August 9, 2007 memorandum opinion and order, however, it explained why defendants' reliance on *Cantrell* was misplaced. *See Klein*, slip op, 11-12 n.3. The court need not do so again here.

statements.  To hold that a party may fraudulently conceal a tort
with impunity, simply by directing its fraudulent conduct toward
third parties on whom plaintiffs would rely (such as physicians),
would violate the equitable principles on which the fraudulent
concealment defense rests.  Moreover, in analogous contexts,
"[c]ourts have held that *indirect* reliance is sufficient to support
a fraud claim where the misrepresentation was made to an
intermediary."  *See, e.g., Ameristar Jet Charter, Inc. v. Signal
Composites, Inc.,* 2001 WL 1172184, at *5 (N.D. Tex. Sept. 28, 2001)
(Lynn, J.) (discussing "reliance" for purposes of fraud claim).
Perceiving no reason why these principles should not apply here,
the court concludes that plaintiffs can establish "reliance" for
purposes of their fraudulent concealment defense by proving that
defendants deceived physicians who ordered E-Ferol administered,
and that this, in turn, prevented plaintiffs from suspecting that
the illnesses and deaths in question did not stem from natural
causes.  *See id.*  Because the question whether plaintiffs have in
fact established this reliance is closely related to the question
whether they exercised "reasonable diligence," it will be discussed
below.[7]

---

[7]In a footnote, defendants cite cases that arise under
Tennessee law and that address the question of when a defendant
must disclose the existence of an underlying tort (rather than
remain silent).  *See Saltire Indus., Inc. v. Waller, Lansden,
Dortch & Davis, PLLC,* 491 F.3d 522, 527 (6th Cir. 2007); *Patten v.
Standard Oil Co. of La.,* 55 S.W.2d 759, 761 (Tenn. 1933).  If
defendants intend to argue that they had no duty to disclose their

- 13 -

Despite the general availability of the fraudulent concealment defense to plaintiffs, "[t]he estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Borderlon*, 661 S.W.2d at 909. In other words, the limitations period will begin to run when the plaintiff would discover, through the use of "reasonable diligence," that he has a cause of action. *KPMG Peat Marwick,* 988 S.W.2d at 750. "[T]he dispositive inquiry is when the plaintiff knew enough that a reasonable person in the plaintiff's place would disbelieve the defendant's denial of improper conduct. At that point, reliance becomes unreasonable, and the tolling effect ends." *Mitchell,* 958 S.W.2d at 442.

"Ordinarily, what constitutes reasonable diligence to discover fraud is a question of fact for the jury. Unless the evidence is such that reasonable minds may not differ as to its effect, the

---

tort because they had no relationship with plaintiffs, this point is inapposite. A jury could reasonably find that defendants did not simply remain silent about their conduct; they affirmatively misrepresented the truth. Under such circumstances, a plaintiff need not establish a duty to disclose. *See, e.g., Santanna,* 954 S.W.2d at 890-91 ("[A]ffirmative misrepresentations can support a fraudulent concealment defense to a statute of limitations bar even in the absence of a duty to disclose.").

question as to whether a party has exercised diligence in discovering fraud is for the jury." *Ruebeck,* 176 S.W.2d at 739 (citations omitted); *see also, e.g., Harding v. Lewis*, 133 S.W.3d 693, 698 (Tex. App. 2003, no pet.) (similar).

B

Applying these principles, the court dismisses the claims of these plaintiffs who learned——more than two years before the lawsuit was filed——that E-Ferol (or an unnamed "Vitamin E drug") might have caused the illnesses and/or deaths in question. At that moment, any reliance on defendants' representations about E-Ferol's safety became unreasonable, and the tolling effect on the limitations statute ceased. *See Mitchell,* 958 S.W.2d at 442. Proof of fraudulent concealment requires a showing that *defendants'* concealing acts prevented plaintiffs from knowing that they had a cause of action, not, for example, that a lawyer's erroneous advice did so, or that the concealment was due to a parent's mistaken belief that E-Ferol would not have been administered to a particular child. *See, e.g.,* Ps. Supp. App. 225-30 (declarations of Douglas Middleton and Jewell Middleton Chandler); *id.* at 308-312 (declarations of Conrado and Christine Marie Saucedo). Accordingly, the claims of these plaintiffs are dismissed. This includes Russell and Virginia Cudmore, *see* Ps. Supp. App. 57-60 (declarations) (averring that they were informed by the doctor that their child's death was possibly due to vitamin E, that they saw

"Vitamin E Toxicity" on autopsy report, that they saw newspaper headlines concerning a vitamin E drug, but that they nevertheless did not make connection that drug could have caused child's death); Lisa Ann Hunsicker Decl., Ps. Supp. App. 71 (stating that she was told in hospital that child's severe stomach swelling was due to vitamin E that he had received); Mary Katherine and Michael Jackson Decls., Ps. Supp. App. 152-55 (stating that they learned at daughter's September 1993 funeral that she had been administered a "drug that killed many babies"); Wanda Lee Eldridge Pennington and Russell Eldridge Decls., Ps. Supp. App. 219-224 (stating that they heard that babies had died from bad vitamin E formula and consulted two different attorneys about possibility of lawsuit, but were advised that they had no claim); Douglas E. Middleton and Jewell Middleton Chandler Decls., Ps. Supp. App. 225-30 (stating that they saw news report about E-Ferol and thought this might have applied to their case, that they consulted an attorney about it, but that they did not pursue claim because attorney advised that E-Ferol did not cause death); Linda Darlene Ogle Myers Decl., Ps. Supp. App. 231-33 (stating that nurse told her she thought "babies might have become ill from a new type of vitamin E that they were using"); Cecily Jane Clark Decl., Ps. Supp. App. 299-301 (stating that she read article discussing E-Ferol and infant deaths at local hospital, believed it to be specifically discussing death of her own child, but was convinced by analysis of interviewed hospital

official that drug did not cause her child's death); and Christine Marie and Conrado Saucedo Decls., Ps. Supp. App. 308-312 (stating that they had read an article about E-Ferol's harming premature babies at their hospital, but concluded that it did not apply to them because their child was not premature). A reasonable jury could only find that these plaintiffs learned of facts, conditions, or circumstances that made unreasonable any continued reliance——direct or indirect——on defendants' misrepresentations.

C

As to the remaining claims, the court concludes that plaintiffs have raised a genuine issue of fact concerning their reliance and reasonable diligence. The record supports an inference that their physicians believed defendants' misrepresentations regarding E-Ferol and therefore did not suspect that the drug had caused the illnesses and deaths in question (as opposed to natural causes). Given that the physicians did not suspect an unnatural cause of death, and the children had already been at risk (in varying degrees) due to prematurity or other complications, a jury could reasonably find that plaintiffs were not unreasonable in concluding, without further inquiry, that the causes of death were natural.

The court finds unavailing defendants' arguments that plaintiffs were unreasonable as a matter of law. First, defendants maintain that, as a matter of law, all plaintiffs must have been

aware of the news coverage of E-Ferol after the drug was recalled. But plaintiffs have adduced summary judgment evidence that (other than the plaintiffs who fall within the category discussed above) they were not aware, and the court declines to hold, as a matter of law, that a reasonably diligent person would have been. A jury could reasonably find that plaintiffs were not given a reason to monitor the news for such reports, and that "reasonable diligence" did not require that they do so.[8]

The cases that defendants cite——which in any event do not address Texas law——are distinguishable. In *United Klans of America v. McGovern,* 621 F.2d 152 (5th Cir. July 9, 1980) (per curiam), the plaintiff *itself* was the object of the media reports in question and had been personally notified of the complained-of government conduct. *See id.* at 153-55 (reasoning that plaintiff should have known of government's concerted effort against it because there was significant news coverage of the effort, a published Senate report about it, and Klan president had been personally notified about it). Similarly, the plaintiffs in *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148 (5th Cir. 1979), were sophisticated

---

[8]Similarly, the court disagrees with defendants' argument that all claims concerning children who died after issuance of the recall notice should be dismissed. A jury could reasonably find that, just as the parents had little reason to suspect that anything tortious had occurred at the time their children became ill, they also had little reason to suspect this at the time of death (and thus no reason to reinvestigate the original causes of illness).

members of the industry who were affected by defendant's wrongdoing and would have been expected to know about a lawsuit that was widely reported in their trade publications. *See id.* at 1153, 1170.

Defendants also argue that any concealment of their tort ended in April 1984, when they sent urgent recall notices to doctors, hospitals, and wholesalers. Under principles already explained, however, in order for the limitations period to have commenced at that time, defendants' disclosure must have been effective to make a reasonably diligent person aware of "facts, conditions, or circumstances which would cause . . . [that] person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Borderlon*, 661 S.W.2d at 909. Because the recall notices were not sent to plaintiffs, the court declines to hold, as a matter of law, that a reasonably diligent person would have learned of them.

The court recognizes that, in the "duty to warn" context, "a manufacturer or supplier may, in certain situations, depend on an intermediary to communicate a warning to the ultimate user of a product." *Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 591 (Tex. 1986). But even then,

> the mere presence of an intermediary does not excuse the manufacturer from warning those whom it should reasonably expect to be endangered by the use of its product. *The issue in every case is whether the original manufacturer has a reasonable assurance that*

> *its warning will reach those endangered by the*
> *use of its product.*

*Id.* (emphasis added).  Thus assuming *arguendo* that these analogous principles apply to this case, there is no indication that defendants had "reasonable assurance" that their recall efforts would be communicated to affected consumers.  For example, there is no suggestion that the hospitals and physicians had committed (or had a legal duty) to contact the parents, guardians, or legal representatives of all prior patients who had been administered the drug.  Therefore, defendants cannot rely on disclosures made to doctors, hospitals, and wholesalers.

Defendants next argue that plaintiffs should have taken certain investigative steps, such as obtained and examined the children's medical records, probed medical staff for answers, or requested an autopsy.  Although a jury could reasonably find that such steps were reasonably prudent in the context of a particular case, the court declines to hold, as a matter of law, that such steps were required of all plaintiffs.  An illustrative claim is that of Barbara Kelly Bennett ("Bennett"), whose child was born 14 weeks prematurely and died 22 days later.  Bennett was told by medical staff that the cause of death was cardiac arrest, possible sepsis, and extreme prematurity. *See* Ps. Supp. App. 23 (Bennett Decl.).  In light of these circumstances (i.e., extreme prematurity and concomitant health complications), a reasonable jury could find that Bennett had no reason to suspect that the death was due to

anything but natural causes, and thus no reason to make further inquiry.

VI

Although the court declines to hold that plaintiffs were unreasonable as a matter of law, it also finds that there are material differences in the factual circumstances of each claim that could affect the jury's analysis of the question. For example, the child of Monica M. Martinez ("Martinez") was born prematurely and was immediately admitted to the neonatal intensive care unit. *See id.* at 20 (Martinez Decl.). Martinez avers that her child "was doing fine, just like a normal baby" by the fourth day of his life, but that he soon took a dramatic turn for the worse. His skin color changed, he became extremely swollen, and he died. *Id.* Like Bennett, she did not inquire further into her child's death, but unlike Bennett, she was never given an explanation for it. *See id.* Although a reasonable jury could still find that additional inquiry was not required under these circumstances, the dramatic worsening of the child's physical condition, coupled with the absence of any medical explanation for death, makes it a closer question. In short, the factual variations between the claims of Bennett and Martinez might lead to different dispositions of the "reliance" and "reasonable diligence" issues.

This class action was certified on the premise that "[c]ommon

questions predominate over questions affecting individual class members." *Klein I,* 222 F.R.D. at 568.  At the time of certification, it may not have been apparent to Judge Buchmeyer that a fraudulent concealment defense would be at issue.  *See id.* (analyzing commonality of plaintiffs' underlying tort claims without addressing fraudulent concealment or "reasonable diligence").  After further motion briefing, however, it now appears that individualized fact issues predominate with respect to the reliance and reasonable diligence inquiries.

"The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts." *Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir. 1983).  "When appropriate, a class may be divided into subclasses that are each treated as a class under [Rule 23]." Fed. R. Civ. P. 23(c)(5).

Accordingly, within 30 days of the date this memorandum opinion and order is filed, the parties must submit supplemental briefing that addresses whether the class certified in this case should be decertified or modified in some respect.  After the court reviews the supplemental briefing, it will decide whether to invite opposition responses.

Defendants also move for partial summary judgment as to non-death claims arising in Tennessee.  They maintain that these claims are time-barred under Tennessee's statute of repose.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.031(a)(3) (providing that, in addition to complying with Texas statute of limitations, claims arising in another state must comply with that state's time limits for filing suit).[9]   Under the governing statute of repose, the Tennessee

_____

[9]Plaintiffs point out that Texas' "borrowing statute" did not take effect until 1997, and they suggest that Texas law does not allow its application to claims arising beforehand.  The court disagrees.

In *Owens Corning v. Carter,* 997 S.W.2d 560 (Tex. 1999), the Texas Supreme Court addressed the question whether applying the "borrowing statute" to Alabama plaintiffs whose asbestos claims accrued under Texas law, but were not yet barred when the statute took effect on May 29, 1997, violated various Texas and United States constitutional provisions.  The court held that it did not.  First, the court concluded that the statute was not unconstitutional under Tex. Const. Ann. art. I, § 16, despite the absence of a grace period that afforded a reasonable time or fair opportunity to preserve a claimant's rights under the former law.  It reasoned that considerations of fair notice, reasonable reliance, and settled expectations play a prominent role when, *inter alia*, a state shortens an existing statute of limitations for claims arising in that state, thereby disrupting settled expectations and extinguishing accrued causes of action.  But in this case, the Alabama plaintiffs failed to sue within the time allotted by Alabama law——the state where they resided and where their claims arose.  Because they brought suit in Texas to avoid Alabama's time bar, such concerns played a minimal role and did not justify applying a grace period.  *Id*. at 572-73.  The court also noted that the borrowing statute did not significantly change existing law, both state's statutes of limitations remain unchanged with respect to claims arising in each state, and the borrowing statute simply provided that the statute of limitations of the state in which the wrongful act, neglect, or default occurred must be satisfied.  It pointed out that requiring a grace period for otherwise time-barred claims would defeat the very purpose of the

plaintiffs were required to file suit within ten years of the date

E-Ferol was purchased, or "within a period of one (1) year after

attaining the age of majority," whichever was later.  Tenn. Code

Ann. § 29-28-103(a) (2008); *Holt ex. rel. Holt v. Hypro, A Div. of*

*Lear Siegler, Inc.*, 746 F.2d 353, 354 (6th Cir. 1984).  This means

that the latest a Tennessee plaintiff could have filed timely suit

---

borrowing statute, and that a plaintiff should not be able to gain
greater rights than he would have had in the state where the cause
of action arose, and where he lived, simply by bringing suit in
Texas.  *Id.* at 573.

The court next rejected the contention that applying the
borrowing statute violated the open courts provision of the Texas
Constitution, Tex. Const. Ann. art. I, § 13.  Considering the
general purpose of the statute and the extent to which the
litigant's right was affected, the court reasoned that the claim at
issue was an Alabama plaintiff's personal injury claim arising in
Alabama, and the right to pursue that claim was not unreasonably
abrogated by a borrowing statute when the right remained the same
under Alabama law as it had before, and the only right being
restricted was the right to pursue the claim in Texas after it was
time-barred in Alabama.  *Id.* at 574.  Moreover, it was within the
Legislature's authority to make reasoned adjustments in the legal
system, such as by precluding plaintiffs from gaining greater
rights in Texas than they would have had in the state where the
claim arose.  *Id.* at 574.

Finally, the court held that the borrowing statute did not
violate the Privileges and Immunities Clause of Article IV of the
United States Constitution, relying on the United States Supreme
Court's decision in *Canadian Northern Railway v. Eggen,* 252 U.S.
553 (1920), and rejecting the plaintiffs' contention that *Canadian
Northern* was inapplicable because, unlike Texas, Alabama did not
apply the discovery rule.  *Id.* at 575-76.

Applying *Owens Corning* to the present case, the court discerns
no basis to conclude that the borrowing statute does not apply to
the claims of non-Texas plaintiffs or that it would be
unconstitutional to apply the statute to those claims.

is April 2003.[10]   This lawsuit was not filed until May 2003.

Accordingly, all Tennessee-based claims are time-barred unless an

exception applies.

Plaintiffs again rely on the fraudulent concealment defense,

maintaining that this defense applies to Tennessee's statute of

repose just as it applies to its statutes of limitations.  *See,*

*e.g., Benton v. Snyder,* 825 S.W.2d 409, 414 (Tenn. 1992) (holding

that fraudulent concealment may toll statute of limitations).  The

court disagrees.

The Tennessee Supreme Court has explained the distinction

between statutes of repose and statutes of limitations:

> [s]tatutes of repose operate differently than
> statutes of limitation, primarily because
> statutes of repose typically begin to run with
> the happening of some event unrelated to the
> traditional accrual of the plaintiff's cause
> of action.  Because a plaintiff's cause of
> action can be eliminated by a statute of
> repose even before it accrues, statutes of
> repose have been said to extinguish both the
> right and the remedy[.]

*Penley v. Honda Motor Co.,* 31 S.W.3d 181, 184 (Tenn. 2000)

(internal citations omitted) (discussing Tenn. Code Ann. § 29-28-

103(a), the same statute of repose at issue here).  "[T]he statute

of repose [i]s "an outer limit or ceiling superimposed upon the

existing statute of limitations."   *Id.* (quoting *Harrison v.*

---

[10]The latest that E-Ferol was administered was April 1984.
Accordingly, the youngest plaintiff in this case would have turned
18 in April 2002.  Applying the one-year exception for minors, that
plaintiff would have had until April 2003 to file suit.

*Schrader*, 569 S.W.2d 822, 826 (Tenn. 1978) (internal brackets omitted)). Its "language compels the conclusion that [the legislature] intended for the ten-year repose period to be an absolute bar beyond which no products liability cause of action could exist." *Id.* at 185. Courts are not free to apply exceptions that have not been expressly provided within the statute. *See id.* (refusing on this basis to imply exception for mental incompetency) ("Section 29-28-103 originally contained one express exception to the general ten-year limitations period [for minors], and the General Assembly has twice amended the statute since 1978 to include other express exceptions. The failure of the General Assembly to expressly include any provision exempting persons of unsound mind from the statute of repose strongly indicates its desire not to have such an exemption.").

Although the statute of repose governing *medical malpractice* cases contains an exception for fraudulent concealment, there is no such exception for cases involving injury by products, such as plaintiffs allege in the present case. *Id.* at 184; *compare* Tenn. Code Ann. § 29-28-103 (governing products liability) *with* Tenn. Code Ann. § 29-26-116 (governing medical malpractice). Accordingly, the Tennessee claimants are precluded from invoking the fraudulent concealment doctrine, and their non-death claims are time-barred. *See Damron v. Media Gen., Inc.,* 3 S.W.3d 510, 512 (Tenn. Ct. App. 1999) (holding that Tennessee law does not allow

fraudulent concealment exception to § 29-28-103); *Greene v. Brown & Williamson Tobacco Corp.*, 72 F.Supp.2d 882, 888 (W.D. Tenn. 1999) (same).[11]

## VIII

Defendants also move for summary judgment with respect to the single claim arising in Iowa. The parties agree that the same principles of fraudulent concealment that govern the Texas cases apply to this claim, and they raise the same arguments. Because the Iowa plaintiff adduces evidence that she had no knowledge about receiving E-Ferol until after this lawsuit was filed, *see* Ps. Supp. App. 343 (Lori Ann Schueller Decl.), and for the reasons discussed above, the court denies summary judgment as to this claim.

\*     \*     \*

Accordingly, for the reasons explained, the court grants in part and denies in part defendants' December 15, 2006 motion for partial summary judgment, and it directs that the parties submit supplemental briefing on whether the class certified in this case should be decertified or modified in some respect.

**SO ORDERED.**

May 22, 2008.

SIDNEY A. FITZWATER
CHIEF JUDGE

---

[11]In the court's August 9, 2007 memorandum opinion and order, it did not consider the specific application of this defense to Tennessee's statutes of repose.