```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                    WICHITA FALLS DIVISION

VICTORIA KLEIN, et al.,           §
                                  §
            Plaintiffs,           §
                                  § Civil Action No. 7:03-CV-102-D
VS.                               §
                                  §
O'NEAL, INC., d/b/a O'NEAL,       §
JONES & FELDMAN                   §
PHARMACEUTICALS, et al.,          §
                                  §
            Defendants.           §
```

## MEMORANDUM OPINION AND ORDER

In this class action alleging personal injury and death claims arising from the manufacture and distribution of E-Ferol Aqueous Solution ("E-Ferol"), Lawrence V. Long, Jr. ("Long") moves for leave to opt out of the certified class. Although the deadline for opting out expired more than two years ago, Long contends that his failure to comply with the deadline should be excused as a matter of procedural due process and on the basis of excusable neglect. The other class plaintiffs (collectively, "class plaintiffs" unless the context otherwise requires) and defendants O'Neal, Inc., d/b/a O'Neal, Jones & Feldman Pharmaceuticals, CVS Revco D.S., Inc., and Retrac, Inc. oppose the motion. For the reasons that follow, the court declines to allow Long to opt out of the class at this time.[1]

---

[1] On June 23, 2008, at the parties' request, the court entered an order staying this litigation so that the parties could pursue settlement. The court lifts the stay to the extent necessary to decide this motion.

I

To decide Long's motion, the court need not recount at length the background facts and procedural history of this case. The court will focus instead on the facts that apply to Long's failure to timely opt out. This is a class action alleging personal injury and death claims arising from the manufacture and distribution of E-Ferol, a pharmaceutical product administered intravenously to premature infants between November 1983 and April 1984. In 2004 Judge Buchmeyer, before whom the case was then pending, certified a plaintiffs class consisting of

> [a]ll persons in the United States, including any estate representatives or heirs of deceased persons, who, during the period from November 1, 1983, until April 30, 1984, were administered E-Ferol. Included in the class are parents, spouses, children, guardians, and legal representatives of such persons with direct or derivative claims.

*Klein v. O'Neal, Inc.*, 222 F.R.D. 564, 566 (N.D. Tex. 2004) (Buchmeyer, J.).[2] It is undisputed that Long, whose late daughter was administered E-Ferol in March and April 1984, is a member of the class. Long's daughter received E-Ferol while in the neonatal intensive care unit at Miami Valley Hospital ("Miami Valley") in

---

[2]In 2008 the court raised *sua sponte* that the class certification decision should be reconsidered, and it directed the parties to submit supplemental briefing addressing whether the class should be decertified or modified. *See Klein v. O'Neal, Inc.*, 2008 WL 2152030, at *9 (N.D. Tex. May 22, 2008) (Fitzwater, C.J.). Before the supplemental briefing was completed, the court stayed the proceedings in this case. *See supra* note 1.

Dayton, Ohio, and she subsequently died in June 1984.

Following certification of the class, class counsel began the process of locating class members. On July 10, 2006 class counsel mailed individual class notices to class members whom they had been able to locate. Class counsel had been unable to obtain records, however, from several hospitals known to have administered E-Ferol, including Miami Valley. Thus on July 13, 2006, after receiving the court's approval, class counsel published the class notice in 35 newspapers across the country, including *The Dayton Daily News* (Dayton, Ohio), *The Blade* (Toledo, Ohio), and *USA Today*. Long does not dispute that he and his wife resided in Dayton in July 2006. The court set September 11, 2006 as the opt-out deadline.

Class counsel continued to pursue records concerning potential class members from Miami Valley, and they subsequently secured them in October 2007. After identifying Long as a class member, class counsel sent Long and his wife a November 1, 2007 letter informing them of this class action and of their class membership. Long asserts that he received this letter on November 5, 2007, and that this was the first time he or his wife had any knowledge or reason to believe that their daughter's death was caused by E-Ferol. On November 7, 2007 Long contacted a representative of class counsel and discussed the case, and on November 13, 2007 he completed a questionnaire and medical authorization. Long does not dispute that he was aware of, and had access to, the class's website, which

included the pleadings, the class action notice, and the court's orders and decisions. In December 2007 Long and his wife signed declarations attesting to their lack of knowledge concerning the administration of E-Ferol to their daughter, and these declarations were attached to "Class Plaintiffs' Supplemental Response in Opposition to Defendants' Motion for Partial Summary Judgment: Limitations." Class counsel procured more medical records from Miami Valley in January and February 2008, and class plaintiffs' experts analyzed them and concluded that, in their opinion, E-Ferol was a substantial cause of the death of Long's daughter. Long was advised of this finding in May 2008, at which time he informed a representative of class counsel that he planned to sue Miami Valley, who is not named as a defendant in the class action.

Long asserts that, in December 2007, his wife's cancer, which had been in remission, returned. His wife died on June 13, 2008. Long asserts that, during his wife's illness, he devoted his time and energy to caring for her and for their children, and that he was unable during this time to seek legal advice or to take legal action concerning his deceased daughter.

In August 2008 Long contacted his current counsel, John B. Pinney, Esquire ("Pinney"), and he formally retained Pinney on September 4, 2008. Pinney was permitted to appear in this case on behalf of Long, and in September and December 2008 he obtained medical records relating to Long's daughter. On October 8, 2008

Long was appointed administrator of his daughter's estate. He filed the instant motion for leave to opt out on January 9, 2009.

II

Long contends that he should be permitted to opt out as a matter of procedural due process. His due process argument is conclusory and vague, and he cites no case law to support it. Essentially, Long argues that because he did not receive actual notice of the class action until after the opt-out deadline had expired, he must now be given an opportunity to opt out.

A

The court certified the class in this case under Fed. R. Civ. P. 23(b)(3), pursuant to which class members are given an opportunity to opt out of the class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592-93 (1997). Additionally, under Rule 23(c)(2)(B), members of a class certified under Rule 23(b)(3) must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B). The notice given under Rule 23(c)(2)(B) must contain certain information, including the fact that class members may request exclusion from the class, the time and manner for requesting exclusion, and the binding effect of a judgment on class members.[3]

---

[3] Because Long does not dispute the sufficiency of the contents of the notice, the court need not discuss the requisite contents in detail.

*See id.* The Rule 23(c)(2)(B) standard also fulfills due process requirements. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974). It is well established that notice by publication can satisfy due process when information required to identify individual class members cannot be procured through reasonable effort. *See id.* (requiring that class members whose names and addresses can be ascertained through reasonable effort be individually notified); *Hoge v. Parkway Chevrolet, Inc.*, 2007 WL 3125298, at *18 (S.D. Tex. Oct. 23, 2007) ("Courts have found that publication notice can satisfy Rule 23." (citing numerous cases)); *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007) ("While individual notice, where reasonably possible, is required, when class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process."); *In re Prudential Ins. Co. of Am. Sales Practices*, 177 F.R.D. 216, 232 (D.N.J. 1997) ("For those whose names and addresses cannot be determined by reasonable efforts, notice by publication will suffice under Rule 23(c)(2) and under the due process clause." (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950))). If a class member receives the best notice practicable and fails to opt out by the deadline, he is bound by the court's actions concerning the class,

including settlement and judgment.[4]  *See Amchem Prods.*, 521 U.S. at 592-93; *Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56-57 (1st Cir. 2004) (citing *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984)).

B

Long does not contend that he could have been identified through reasonable effort.  Nor does he posit that the notice undertaken at the court's direction was not the best notice practicable under the circumstances or was otherwise insufficient. He argues instead that, even if he did have *constructive* notice and it was the best notice practicable, he must be given an opportunity to opt out after receiving *actual* notice.  According to Long, he "does not dispute that the notice by publication where the class member does not have actual notice may, in some circumstances, be deemed to afford adequate due process." Long Reply Br. 4.  But he

---

[4] Although Long does not rely on Rule 23(e)(4) as a basis for the relief he seeks, the court recognizes that if this case settles, it may in its discretion refuse to approve the settlement unless class members are given a second opportunity to request exclusion from the class.  *See* Rule 23(e)(4) ("If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.").  The possibility, however, that there may be another opportunity to opt out in the context of a settlement does not of itself provide a rationale for granting a class member's request for exclusion that is untimely under the first opt-out deadline imposed in accordance with Rule 23(c)(2)(B)(vi).  If it did, the mere possibility of a second opt-out opportunity arising in connection with a settlement could undermine the binding effect of the first opt-out deadline that applies regardless whether a class action is settled.

contends that "the issue here is not whether [he] was given proper notice—it is whether he can now opt out of the class when he, effectively, was never given the opportunity to do so before." *Id.*

Long's argument misunderstands the nature of constructive notice and the notice requirements. If a class member is given proper notice, such as constructive notice by publication, he is deemed to have been given the opportunity to opt out. To hold that a class member who receives actual notice of a class action after the opt out deadline must always be given another opportunity to opt out, even though he received constructive notice before the deadline, would defeat the purpose of constructive notice. Actual notice would be the only type of notice that could bind a class member. But actual notice is not invariably required. *See, e.g.*, *Eisen*, 417 U.S. at 173-74; *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977).

Long appears to recognize the flaw in his argument, so he also argues that notice by publication only satisfies due process after a final judgment is entered in the case or a settlement is fully consummated. According to Long, if there has been no final judgment or settlement in the class action, a class member must be given an opportunity to opt out after receiving actual notice, even if he has already received constructive notice. Long cites no authority for this proposition, and the court has found none. The court holds that an opt-out deadline may bind a class member who

has received the best notice practicable, regardless whether there has been a final judgment or settlement in the case.[5]

The reasoning that appears to underlie Long's contention is that, if there has been no final judgment or settlement, there can be no prejudice to other parties in allowing him to opt out after the deadline. The court disagrees. Both defendants and class plaintiffs oppose Long's motion, contending that they will be substantially prejudiced if he is allowed to opt out. This case has been stayed since June 23, 2008 so the parties could focus on negotiating a settlement. Long and Pinney have been aware of the settlement discussions since at least September 2008. Both sides are concerned that allowing Long to opt out now would undermine the progress they have made and hinder their ability to reach a mutually acceptable settlement. If Long is permitted to opt out, defendants will be forced to separately defend his individual lawsuit. This not only prejudices defendants but also the other members of the plaintiffs class. In a class action settlement setting, defendants seek and pay for global peace—i.e., the resolution of as many claims as possible. Accordingly, allowing plaintiffs to opt out of a class action after the deadline and

---

[5]As noted, *see supra* note 4, Long does not base his motion or any of his arguments on the possibility of a second opt-out under Rule 23(e)(4). Moreover, the court's discussion in this context is not intended to relate to circumstances in which, in its discretion, it "affords a new opportunity to request exclusion" as a condition to approving a settlement.

- 9 -

during a period of active settlement negotiations so that they can pursue their claims individually can make settlement less valuable to defendants and less likely to occur. Such opt-outs can in turn reduce the leverage of the plaintiffs class and the settlement value of the case. In addition to forcing defendants to defend Long's individual lawsuit, allowing Long to opt out would create the potential for other similarly situated class members to request exclusion. Although the prejudice to the opposing parties may not be as severe as it would be in a case where a settlement has already been reached and approved, the parties would still be prejudiced if Long were permitted to opt out at this time.[6]

The court concludes that due process does not require that Long be given another opportunity to opt out after receiving actual notice of the class action. Long received constructive notice through publication in July 2006. He does not dispute the sufficiency of this notice. He therefore had the opportunity to

---

[6]As before, *see supra* notes 4 and 5, the court is not addressing the possibility of a second opt-out period under Rule 23(e)(4). Moreover, the court's reasoning applies regardless of the possibility of a second opt-out. When parties negotiate the settlement of a certified class action, they presumably factor in the possibility that the court may exercise its discretion to allow a new opportunity for individual class members to request exclusion. But this is a predictable rule-based consideration that potentially applies in every case in which a class is certified under Rule 23(b)(3). The prospect of untimely opt-outs scattered along the path between class certification and a tentative settlement agreement—particularly during a time of active settlement negotiations—is less predictable (if not unpredictable) and can hamper the settlement of a class action that is in fact fair, reasonable, and adequate to class members.

opt out before the September 11, 2006 deadline. Because publication notice can satisfy due process, Long does not have the right to opt out now, more than two years after the deadline expired.

III

The court also holds that, even if Long was due another opportunity to opt out after he received actual notice of the class action, he did not exercise it within a reasonable time.

A

Long asserts that he received actual notice on November 5, 2007. He did not move for leave to opt out until January 9, 2009, more than 14 months later. Long contends that the court should excuse this delay and permit his untimely opt out based on excusable neglect. *See* Rule 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."). The court finds that Long's delay and untimely opt out should not be permitted on this basis.

In determining whether a party should be granted additional time to opt out based on excusable neglect, the court should apply the factors set forth in *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 395 (1993). *See Silvercreek Mgmt., Inc. v. Banc of Am. Sec., LLC*, 534 F.3d 469, 472

- 11 -

(5th Cir. 2008). "Under [*Pioneer Investment Services*], the court is to consider prejudice to the opposing party, length of the delay, and reason for the delay in determining whether the claimant's neglect was excusable and the delay was made in good faith." *Id.* The determination whether a delay is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs.*, 507 U.S. at 395.

B

Although Long argues that there would be no prejudice to defendants or to class plaintiffs if he were now allowed to opt out, the court has already concluded that both defendants and class plaintiffs would be prejudiced. *See supra* § II(B). The length of delay is substantial. *See, e.g.*, *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 WL 2451957, at *1-*3 (S.D. Fla. July 8, 2005) (finding no excusable neglect where class members' opt out forms arrived between two and fours days after opt out deadline). Long waited until more than 14 months after receiving actual notice to attempt to opt out of the class. Long contends that much of this delay should be excused because he was caring for his wife, who was suffering from cancer, and for their children. The weight of these obligations and the toll they must have taken on Long cannot, of course, be underestimated or blithely ignored. It is certainly reasonable that Long would have focused his attention and

energy on caring for his wife and children. But even when the court excuses Long from the delay attributable to the period when his wife was dying from cancer and the months immediately following her death (December 2007 to August 2008), a significant and inexcusable period of delay remains. First, after receiving actual notice on November 5, 2007, Long participated in the class action, completing a questionnaire and medical authorization on November 13 and signing a declaration in December. He did not attempt to opt out of the class at that time. Second, Long retained Pinney to represent him on September 4, 2008, but neither Pinney nor Long even inquired about opting out until four months later.[7] Pinney allegedly was unable to obtain complete hospital records for Long's deceased daughter until December 2008, but this is not a sufficient excuse. Obtaining complete records was not a prerequisite for opting out, especially in light of the facts that Long at any time could have requested copies of the records from class counsel, Pinney obtained some of the records in September 2008, and class counsel's experts had already analyzed the records and Long had been informed of their findings.

Defendants and class plaintiffs also assert that Long's request to opt out is not being made in good faith. Class plaintiffs note that Long availed himself of the services and

---

[7]The class members who were notified in July 2006 had a period of approximately two months to request exclusion before the September 11, 2006 deadline.

expertise of the class for 14 months before attempting to opt out. And defendants point to the timing of the opt-out request. Long and Pinney were aware of the settlement negotiations taking place between defendants and class plaintiffs. In December 2008 they were informed that an in-person settlement conference between the parties' representatives had been scheduled for January 16, 2009. On January 2, 2009 Pinney sent a letter to defendants requesting to know whether they would oppose Long's opt-out motion. After defendants responded that they would, Long filed the instant motion. Defendants contend that the timing of the motion to opt out indicates that Long is attempting to extort higher settlement payments for himself, and that he is undertaking this abusive tactic in bad faith. Long simply responds that he is acting in good faith. The court need not decide whether Long is acting in good faith, however, because it concludes that, even if he is, the delay in moving to opt out should not be excused on the facts presented here.

After considering the applicable factors, the court concludes that Long has not established excusable neglect that justifies waiting until January 9, 2009—more than two years after the opt out deadline and fourteen months after receiving actual notice—to move for leave to opt out. Long received actual notice of the class action on November 5, 2007 and participated in the class action in November and December 2007, but he did not attempt to opt

- 14 -

out during that time.  After formally retaining Pinney in September 2008, Long waited an additional four months to move for leave to opt out when he knew that defendants and class plaintiffs were in the middle of settlement negotiations.  Thus even if Long was due another opportunity to opt out after he received actual notice of the class action, he did not exercise it in a reasonable amount of time.

*     *     *

For the foregoing reasons, Long's January 9, 2009 motion for leave to opt out of class is denied.

**SO ORDERED.**

April 29, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE