IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| VICTORIA KLEIN, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 7:03-CV-102-D |
| VS. | § | (Consolidated with |
| | § | Civil Action No. 7:09-CV-094-D) |
| FEDERAL INSURANCE CO., | § | |
| a/k/a CHUBB GROUP OF | § | |
| INSURANCE COMPANIES, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this settled class action, the class plaintiffs seek to recover part of the funding for

the court-approved settlement from an insolvent excess liability insurer and a trust created

under California law for liquidating the insurer.  The trust moves to dismiss the claims

against it, or, alternatively, for abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

Because the court concludes that resolution of the class plaintiffs' equitable claims would

disrupt state efforts to establish a coherent policy with respect to a matter of substantial

public concern, the court grants the alternative motion to abstain under the *Burford*

abstention doctrine and denies the trust's motion to dismiss.  The court grants the class

plaintiffs leave to file a fourth amended complaint, denies as moot the trust's motion for

judicial notice, and denies the class plaintiffs' motion for an extension of time to respond to

the trust's motion to dismiss or abstain.

I

A

The class plaintiffs are members of a certified class of persons (or are the legal representatives of persons) who, during the period from November 1, 1983 until April 30, 1984, were administered the vitamin E supplement E-Ferol Aqueous Solution ("E-Ferol"). *Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632, 640 (N.D. Tex. 2010) (Fitzwater, C.J.) ("*Klein II*"). In 2003 the putative class sued, among others, Carter-Glogau Laboratories, Inc. ("Carter"), a division and/or subsidiary of Revco D.S., Inc. ("Revco"),[1] alleging claims for negligence, strict liability, and negligent misrepresentation. *Id.* Carter, now known as Retrac, Inc., ("Retrac"),[2] manufactured and developed E-Ferol.

After the class was certified, settlement discussions ensued, resulting in a proposed settlement that resolved all claims between the class plaintiffs and defendants in exchange for lump sum payments or non-monetary relief, depending on the class member's category. *Klein II*, 705 F.Supp.2d at 642-43. The settlement was to be funded entirely by defendants' insurers. *Id.* Defendants Federal Insurance Co., a/k/a Chubb Group of Insurance Companies ("Federal") and International Insurance Co., a/k/a Westchester Fire Insurance Company, n/k/a ACE USA, Inc. ("International"), two of the insurers of defendants Retrac and Revco

---

[1] In 1997 Revco merged with CVS Corporation and the new corporation was named CVS Revco D.S., Inc.

[2] In December 1986 all the assets of Carter were sold with the liabilities remaining in the corporate entity that was then named Retrac.

- 2 -

(collectively, "the Revco defendants"), did not agree to the settlement. *Id.* A third insurer of the Revco defendants, Mission Insurance Co. ("Mission"), was insolvent at the time of the settlement and likewise was not a party to the settlement. *Id.* at 612. The court approved the class settlement, *see id.* at 682, and, under the settlement agreement, the Revco defendants assigned to the class plaintiffs their respective rights of indemnification against Federal, International, and Mission.

The class plaintiffs then filed their third amended complaint in which they named as defendants Federal, International, Mission, and the Mission Insurance Co. Trust ("MICT"). The class plaintiffs seek a judgment declaring that the excess liability insurance policies issued by Federal, International, and Mission cover the liability and damages allegation by the class plaintiffs in the class action, and that defendants must indemnify the class plaintiffs, as assignees of the Revco defendants, to the full extent of the $110 million settlement, as set out in the settlement agreement.

B

In April 1984 Revco first provided notice to its various insurers, including Mission, that claims had been made against it based on allegations of E-Ferol toxicity. Over one year later, in October 1985, Mission was placed in receivership by the Commissioner of Insurance of the State of California ("Commissioner"). The insolvency proceedings in California resulted in the formation of various trusts, including MICT, which commenced liquidation proceedings in 1987 and holds the assets collected from Mission. The class plaintiffs allege that, prior to the claims bar date of September 12, 1987, Revco filed approximately 243

- 3 -

proofs of claim with the receiver, representing 89 infants who had received E-Ferol and were then making claims. None of these claims was for an infant or a parent of an infant who was a member of the class. Virtually all claims were denied by the liquidator based on the determination that the claims did not reach the final layer of the Revco defendants' excess coverage, which Mission shared with other carriers.

The class plaintiffs filed their complaint in this class action on May 29, 2003. After the complaint was filed, and allegedly acting with knowledge of the class action complaint, the Commissioner filed a motion in the Los Angeles Superior Court for liquidation of claims and final distribution. The motion requested a cut-off date of December 31, 2003 for unliquidated Section 1025 claims,[3] but failed to advise the superior court that the *Klein* action had been filed and that the proposed cut-off date would cut off the right of the class members to obtain a distribution. The superior court entered the order that the Commissioner had requested. On June 25, 2004, following this court's May 11, 2004 class certification order, the superior court conducted another hearing and, without rescinding its prior order, set August 2, 2004 as the bar date for liquidation of Section 1025 claims. In January 2006 the superior court entered an order permanently enjoining "all creditors, policyholders, equity holders, officers, directors, and other persons or entities of any type or nature from bringing,

--------

[3]The term "Section 1025 claims" refers to long tail claims, which are claims made under an "occurrence" policy like the one the Revco defendants had with Mission. According to plaintiffs, insurance policies with "occurrence" coverage are known in the insurance industry as "long tail" policies because the insurance carrier may be called upon to defend and/or indemnify for an occurrence that happened years after the policy was issued. Long tail claims are governed by California Insurance Code § 1025.

asserting, maintaining, or pursuing any claim, suit, demand, offset, proceeding, arbitration, administrative proceeding or other legal process of any kind or nature" against Mission or MICT.  3d Am. Compl. ¶ 46.

In September 2010, after the entry of judgment in the class action, the representatives of the class plaintiffs sent a copy of the judgment to the Commissioner with a demand for payment.  The Commissioner's attorney responded, recounting the various bar dates for claims, citing the superior court's January 24, 2006 order authorizing the closure of the proceedings, and explaining that "the liquidation has been wound up" and that "the demand is not well-taken."  Ps. App. at 43-44.  The class plaintiffs did not request relief from the superior court.  On October 5, 2011 they filed in this class action a third amended complaint seeking a declaratory judgment under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 ("DJA"), that the prohibition of their making a claim violates their right to due process of law and equal protection of the law, as guaranteed by the Fifth and Fourteenth Amendments.  They also seek an order of this court requiring that the Commissioner reopen the deadline for filing class claims and permit the class plaintiffs to submit claims for review and adjudication by the appropriate administrative process in the California receivership.

C

MICT moves the court to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, to abstain.  It also requests that the court take judicial notice of certain orders of the superior court that it maintains impact this case.  The class plaintiffs seek an extension of time to respond to MICT's motion to dismiss or abstain, arguing that

under Rule 12(d) the court should treat the motion as one for summary judgment and allow the class plaintiffs to develop evidence and then respond on the merits.  On February 1, 2012 the court entered an order requiring that the class plaintiffs respond to MICT's argument that the court should abstain under the *Burford* abstention doctrine.  Feb. 1, 2012 Order at 1.  The court also directed the class plaintiffs to

> address the grounds on which they rely to contend that the relief they are seeking by way of declaratory judgment (that their constitutional due process and equal protection rights have been violated) is properly sought where MICT is the defendant (rather than, for example, the Commissioner of Insurance of the State of California, the State of California, or a party who plaintiffs maintain deprived them of these rights).

*Id.*  The class plaintiffs have responded concerning the *Burford* abstention doctrine and have also moved for leave to file a fourth amended complaint to clarify their constitutional and common law claims and to add the Commissioner, Dave Jones ("Commissioner Jones"), as a party in his capacity as receiver, trustee, and fiduciary of the Mission insolvency.  MICT opposes the motion for leave to amend, arguing, *inter alia*, that briefing on this issue should be stayed until the court decides the motion to dismiss or abstain.

## II

The court considers first whether it should abstain under the *Burford*  abstention doctrine from exercising jurisdiction over the class plaintiffs' claims against MICT.  MICT argues, *inter alia*, that the court should abstain from deciding the class plaintiffs' equitable claims because to do otherwise would disrupt California's comprehensive scheme concerning the regulation of the business of insurance and the specific steps that have been taken over

26 years in the Mission receivership.[4]

A

*Burford* abstention is appropriate in two circumstances: first, when a case involves "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the particular case at bar"; and, second, when "the exercise of federal jurisdiction over the question in the case would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Barnhardt Marine Ins., Inc. v. New England Int'l Sur. of Am., Inc.*, 961 F.2d 529, 531 (5th Cir. 1992) (citations omitted). This doctrine has typically been applied where a suit is filed against an insurance company in receivership, "on the ground that states have primary responsibility for regulating the insurance industry and have comprehensive receivership and liquidation regulations." *Health Net, Inc. v. Wooley*, 534 F.3d 487, 496 (5th Cir. 2008). "Although *Burford* abstention is generally considered the exception rather than the rule, the insurance insolvency context presents the classic example of the doctrine's goal of preventing 'needless conflict with state policy.'" *Callon Petroleum Co. v. Frontier Ins. Co.*,

---

[4]MICT also argues that plaintiffs' claims should be dismissed under the Anti-Injunction Act, or, alternatively, under *Younger* abstention. The court holds that the Anti-Injunction Act, which limits the circumstances in which a federal court can enjoin state-court proceedings, *see* 28 U.S.C. § 2283, to be inapposite because the class plaintiffs are not asking the court to enjoin state-court proceedings. *See, e.g., Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 192 (5th Cir. 2008) (holding that where district court order did not actually stay any state court proceedings, Anti-Injunction Act was not implicated). And because the court is abstaining under the *Burford* abstention doctrine, it need not not address whether it should abstain under *Younger v. Harris*, 401 U.S. 37 (1971).

351 F.3d 204, 209 (5th Cir. 2003) (quoting *Burford*, 319 U.S. at 327) (noting, in case where

plaintiff sought to collect on bond that insolvent insurance company had issued in plaintiff's

favor, that "had the Superintendent timely moved the district court to dismiss or stay this

action on *Burford* grounds, it would have been proper, if not obligatory, for the district court

to have done so.").

As a prerequisite to *Burford* abstention, "timely and adequate state-court review [must

be] available." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S.

350, 361(1989) ("*NOPSI*").[5]   The doctrine also requires that, before the court can abstain,

the federal court must be sitting in equity or otherwise petitioned for discretionary relief.

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996).   The court must consider five

factors in determining whether to abstain under *Burford* :

> (1) whether the cause of action arises under federal or state law;
> (2) whether the case requires inquiry into unsettled issues of
> state law or into local facts; (3) the importance of the state
> interest involved; (4) the state's need for a coherent policy in
> that area; and (5) the presence of a special state forum for
> judicial review.

*Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993) (internal citations

omitted); *see also Koerner v. Garden Dist. Ass'n*, 78 Fed. Appx. 960, 963 (5th Cir. 2003)

---

[5]The state court must also have jurisdiction over the claim. "Where a state court lacks jurisdiction over a plaintiff's claim, *Burford* abstention is clearly inappropriate because there can be no opportunity for 'timely and adequate state court review' of a claim that a court has no power to decide." *Riley v. Simmons*, 45 F.3d 764, 773 (3d Cir. 1995) (citations omitted). Section 1032 of the California Insurance Code clearly vests judicial review of the Commissioner's rejection of a claim in the superior court.

(applying *Wilson* factors to find *Burford* abstention was appropriate).

B

As noted above, under *NOPSI* a prerequisite to *Burford* abstention is the availability of timely and adequate state-court review. *See NOPSI*, 491 U.S. at 361. The class plaintiffs argue that judicial review is unavailable because the Commissioner "has never acknowledged, much less considered, allowed, or rejected the claims of the [class plaintiffs]" as is required for judicial review under § 1032 of the California Insurance Code. Ps. Br. 16. They maintain that because they have not received the rejection notice required by § 1032, they cannot seek judicial review in the California court.

On September 20, 2010 counsel for the class plaintiffs sent a letter to then-Commissioner Steve Poizner, attaching this court's June 18, 2010 final judgment and making a demand for $2.5 million, as part of the $110 million total settlement. The Commissioner's attorney responded by letter, citing the superior court's January 24, 2006 order, explaining that "the case is closed, and the liquidation has been wound up," and stating that "[b]ecause the case is subject to the Closing Order, the demand is not well-taken." Ps. App. 44.

Section 1032 of the California Insurance Code provides:

> When a claim is rejected by the commissioner, written notice of rejection shall be given by mail, addressed to the claimant at the address set forth in his claim. Within thirty days after the mailing of the notice the claimant may apply to the court in which the liquidation proceeding is pending for an order to show cause why the claim should not be allowed.

Cal. Ins. Code § 1032 (West 2005). "Section 1032 is unambiguous on its face." *Ins. Comm'r of the State of Cal. v. Golden Eagle Ins. Co.*, 2002 WL 968835, at *3 (Cal. Ct. App. May 10, 2002). It requires written notice of rejection, sent by mail, addressed to the claimant at the address set forth in his claim. The letter sent by the Commissioner's attorney satisfies these requirements. The class plaintiffs were then permitted under California law to apply to the superior court for an order to show cause why the claim should not be allowed.

C

Having determined that timely and adequate state-court review was available to the class plaintiffs in this case, the court next considers whether it should abstain from deciding their constitutional claims against MICT. To make this determination, the court considers the five *Wilson* factors. *See Wilson*, 8 F.3d at 314; *see also Koerner*, 78 Fed. Appx. at 963.

1

The first two factors—whether the cause of action arises under federal or state law and whether the case requires inquiry into unsettled issues of state law or into local facts—weigh against abstention. The complaint alleges, in general terms, that "the prohibition against making a claim by [the class plaintiffs] violates the basic right to due process of law and equal protection of the law guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution." 3d Am. Compl. ¶ 49. The class plaintiffs provide further details regarding their constitutional allegations in response to MICT's motion to dismiss. The class plaintiffs appear to assert allegations that can be grouped into three categories: (1) the Commissioner and MICT violated the class plaintiffs' constitutional due process and equal protection rights

by failing to give them actual or constructive notice of the deadlines and orders in the liquidation proceedings; (2) the Commissioner and MICT violated the class plaintiffs' constitutional due process and equal protection rights by refusing to find that the class plaintiffs "substantially complied" with the requirements of California Insurance Code § 1025, even though the Commissioner found that other claimants in the same or similar circumstances in the Mission insolvency had "substantially complied" with these requirements; and (3) the Commissioner and MICT violated the Full Faith and Credit Clause by refusing to honor this court's June 18, 2010 final judgment.

Because each claim arises under federal constitutional law, it will not be necessary for the court to resolve any questions of California law to decide the class plaintiffs' constitutional claims. To determine whether the Due Process Clause required that individual class members receive actual or constructive notice of the deadlines and hearings in the Mission insolvency, it will not be necessary for the court to decide an unsettled issue of California law. The Insurance Code clearly sets out who is required to receive notice as part of the insolvency proceedings, *see* Cal. Ins. Code. § 1021, and the class plaintiffs do not allege that the Commissioner or MICT violated California law. Instead, the class plaintiffs argue that the provisions themselves, and as applied to them, result in a deprivation of due process. To resolve this claim, the court will apply federal constitutional law, not California law. To determine whether the Commissioner or MICT violated the Full Faith and Credit clause by denying the class plaintiffs' request to reopen the insolvency proceedings despite this court's June 18, 2010 final judgment, the court will not have to decide an unsettled issue

of California law.  Likewise, although the question whether the class plaintiffs "substantially complied" with the requirements of California Insurance Code § 1025 requires an analysis of California law, the court need not decide this question to address the class plaintiffs' constitutional claim.  The class plaintiffs allege that the Commissioner failed to accord them the same treatment that he provided other claimants in the same or similar circumstances. The court can determine whether MICT and the Commissioner's disparate treatment of the various claims violated the Equal Protection or Due Process Clauses without resolving whether, under California law, the class plaintiffs "substantially complied" with the provisions of § 1025.

2

The third, fourth, and fifth *Wilson* factors, however, all weigh in favor of abstention. Under the third factor, the court considers the importance of the state interest involved.  The fourth factor addresses the state's need for a coherent policy in that area.  *Wilson*, 8 F.3d at 314.  Courts in this circuit have long recognized that the regulation of insolvent insurers is an area in which there is an important local interest and in which there is a need for a coherent policy.  *See, e.g.*, *Callon Petroleum Co.*, 351 F.3d at 209 ("[I]nsurance regulation has long been recognized as an area of traditional state concern." (quoting *Gross v. Weingarten*, 217 F.3d 208, 223 (4th Cir. 2000))); *Clark v. Fitzgibbons*, 105 F.3d 1049, 1052 (5th Cir. 1997) (affirming decision to abstain under *Burford* where plaintiffs asserted various state-law claims against insolvent insurance company and Arizona special deputy receiver and noting "the importance of a coherent state policy to manage insolvent insurance

- 12 -

companies"); *Barnhardt Marine Ins., Inc.*, 961 F.2d at 531 ("*Burford*-type abstention is appropriate in an action against an insurance company which is the subject of a Louisiana liquidation proceeding."); *Martin Ins. Agency, Inc. v. Prudential Reinsurance Co.*, 910 F.2d 249 (5th Cir. 1990) (affirming dismissal, under *Burford*, of claims against reinsurers of insolvent insurance company because of "Missouri's comprehensive scheme for the regulation of insurance companies and their liquidation under the [Uniform Insurers Liquidation Act]").  Because insolvent insurers are ineligible for the protections afforded by the federal Bankruptcy Code, *see* 11 U.S.C. § 109, they are instead subject to the comprehensive oversight of state administrative agencies and courts, *see, e.g.*, Cal Ins. Code § 1010 *et seq*.  Indeed, "[f]ederal law consigns to the states the primary responsibility for regulating the insurance industry."  *Clark*, 105 F.3d at 1051 (citing 15 U.S.C. §§ 1011-15 (McCarran-Ferguson Act); *Barnhardt*, 961 F.2d at 531).  "[A]llowing a creditor or claimant to proceed against an insolvent insurer in federal court while a state insolvency proceeding is pending would 'usurp [the state's] control over the liquidation proceeding by allowing [the claimant] to preempt others in the distribution of [the insurance company's] assets.'"  *Id.* (alterations in original) (quoting *Barnhardt*, 961 F.2d at 532).  "This not only would violate the policy of the McCarran-Ferguson Act, but also would undermine 'the comity rationale promoted by the *Burford* doctrine.'"  *Id.* (quoting *Barnhardt*, 961 F.2d at 532).

The State of California has enacted laws regulating insurance activities, including a comprehensive framework for the liquidation of insolvent insurance companies and the

- 13 -

resolution of claims against them.[6]  *See* Cal. Ins. Code § 1010 *et seq.*  Pursuant to this

---

[6]In *Garamendi v. Golden Eagle Ins. Co.*, 27 Cal. Rptr. 3d 239 (Cal. Ct. App. 2005), the court explained California's insurance insolvency proceedings as follows:

> Insurance Code section 1011 authorizes the commissioner to apply to the superior court for an order creating a conservatorship over the assets of an insurance company upon a showing that, in very general terms, the insurer "is in such condition that its further transaction of business will be hazardous to its policyholders, or creditors, or to the public," including insolvency.  (Ins. Code, § 1011, subds. (d) & (i).) Upon such a showing, the trial court is directed to enter an order vesting title to "all of the assets" of the insurer in the commissioner and directing the commissioner "to conduct, as conservator, the business" of the insurer, to the exclusion of the insurer's officers and employees.  (Ins. Code, § 1011.)  If the commissioner concludes that "it would be futile to proceed as conservator with the conduct of the business" of the insurer, the commissioner "may apply to the court for an order to liquidate and wind up the business."  (Ins. Code, § 1016.)  The trial court overseeing the conservatorship is vested with substantial authority to aid the commissioner in the conduct of the troubled insurer's business or liquidation, including the power to enjoin the prosecution of pending actions against the insurer.  (Ins. Code, § 1020 & subd. (c).)  Once an order has been issued authorizing liquidation, the commissioner is directed to give notice to all shareholders and potential creditors of the insurer, who are provided six months to file with the commissioner any claims they might have against the insurer.  (Ins. Code, § 1021.) Claimants are specifically directed to "set forth, under oath" a specific list of information, including "[t]he particulars" of the claim, whether it is secured, the amount, and "[s]uch other data or supporting documents as the commissioner requires."  (Ins. Code, § 1023.) Claims not submitted in accord with the statutory requirements "shall not be entitled to filing or allowance, and no action may be maintained thereon."  (Ins. Code, § 1024.)  If the commissioner rejects a claim, "the claimant may apply to the court in which the liquidation proceeding is pending for an order to show cause why the claim should not be allowed."  (Ins.

regulatory framework, the Commissioner and superior court have been intimately involved in the Mission insolvency since 1985, and have managed the assets of, and claims against, Mission for over 26 years.  The class plaintiffs describe the Mission insolvency as "one of the most, if not the most, complex and long-standing insurance company insolvency proceeding[s] undertaken in the United States." 3d Am. Compl. ¶ 44.  The numerous orders entered in the California proceedings, including the superior court's order permanently enjoining all claims against Mission, evince the State of California's desire for a coherent policy regarding insurer liquidations.  Because the regulation and management of insolvent insurers involve important state concerns, and because, in this specific insolvency, there is a need for a coherent policy, the court concludes the third and fourth *Wilson* factors weigh heavily in favor of abstention.

The fifth *Wilson* factor—the presence of a special state forum for judicial review—likewise favors abstention.  California Insurance Code § 1032 provides for review in the superior court of the Commissioner's rejection of a claim.  *See* Cal. Ins. Code § 1032 ("Within thirty days after the mailing of the [written notice of rejection] the claimant may

---

Code, § 1032.)  Jurisdiction over lawsuits against the insurer, including those pending at the time of the conservatorship, and jurisdiction over lawsuits brought by the commissioner in the exercise of the commissioner's authority as conservator is vested in the trial court overseeing the conservatorship.  (Ins. Code, § 1058.)

*Id.* at 247-48.

apply to the court in which the liquidation proceeding is pending for an order to show cause why the claim should not be allowed."); *Low v. Golden Eagle Ins. Co.*, 125 Cal. Rptr. 2d 155, 167 (Cal. Ct. App. 2002) ("Claimants had a right to judicial review of the Insurance Commissioner's decision in an order-to-show-cause proceeding[.]").   The superior court is not only familiar with the entire history of the Mission insolvency; it has developed expertise in this area over its 26-year history.

D

The court concludes that, although the class plaintiffs' claims are federal in nature, the *Wilson* factors weigh more heavily in favor of *Burford* abstention.   In *NOPSI* the Supreme Court explained that a federal court sitting in equity

> *must decline* to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; *or* (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*NOPSI*, 491 U.S. at 361 (citation omitted) (emphasis added).   Here, the exercise of federal review over the Commissioner's rejection of the class plaintiffs' claims would be disruptive of California's efforts to establish a coherent policy with respect to the Mission insolvency, a matter of public concern.   *Id.*   Moreover, this court must favor abstention in deference to state insurance insolvency or liquidation proceedings.   *See Clark*, 105 F.3d at 1052 ("[I]n [the Fifth Circuit], *NOPSI* has not abrogated the rule favoring abstention in deference to state

- 16 -

insurance insolvency or liquidation proceedings."). Accordingly, the court abstains under *Burford* from exercising jurisdiction over the class plaintiffs' constitutional claims.

E

The class plaintiffs argue that, because their claims are not discretionary in nature, abstention is precluded under the Supreme Court's holding in *Quackenbush*. Specifically, they maintain that their claims

> are not discretionary, but sound rather in tort, including intentional violations of the rights of due process and equal protection, and in contract for the determination of the coverage of the insurance policy at issue for torts alleged by the class against Mission's insured and for payment by the receiver as a fiduciary of Mission Insurance Company under the insurance contract.

Ps. Br. 13-14.

In *Quackenbush* the Supreme Court held that "the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief." *Quackenbush*, 517 U.S. at 718. *Quackenbush* does not preclude *Burford* abstention in this case because the class plaintiffs seek equitable relief in the form of an injunction and declaratory judgment, which the court has discretion to grant or deny.

The class plaintiffs also rely on the "strong policy of retaining federal jurisdiction . . . when federal constitutional questions are presented." Ps. Br. 13. They argue that "[d]enying due process and depriving innocent claimants of their property interests under clear interpretations of the late filing procedures of Section 1025 . . . certainly does not come

- 17 -

under the 'extraordinary circumstances' necessary to apply the *Burford* abstention [doctrine]." *Id.* at 20.  But "*Burford* itself states that abstention is appropriate whether jurisdiction is premised on diversity jurisdiction or otherwise, if the federal courts should, consistent with our federal system, afford comity to state governments in carrying out their domestic policy." *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997); *see also Burford*, 319 U.S. at 317-18 ("Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, *whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise*, 'refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest'; for it 'is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy.'" (emphasis added) (citations omitted)).

> *Burford* abstention does not so much turn on whether the plaintiff's cause of action is alleged under federal or state law, as it does on whether the plaintiff's claim may be "in any way entangled in a skein of state law that must be untangled before the federal case can proceed."

*Sierra Club*, 112 F.3d at 795 (quoting *Quackenbush*, 517 U.S. at 727).  In any event, courts have abstained under *Burford* even where federal constitutional claims have been alleged. *See, e.g., Burford*, 319 U.S. at 317 (abstaining where plaintiffs alleged that order of state agency had denied plaintiffs "due process of law."); *Health Net, Inc. v. Wooley*, 534 F.3d 487, 494-96 (5th Cir. 2008) (holding that *Burford* abstention doctrine required district court to abstain from hearing plaintiff's claim that *ex parte* communication between the court and

state-appointed receivers deprived plaintiff of Fourteenth Amendment due process right to a fair trial).

III

In addition to their constitutional claims, the class plaintiffs seek a declaration under the DJA that "the Mission policy provides liability insurance coverage for the allegations of liability and damages alleged by the plaintiff class against the Revco defendants and, as such, . . . the Mission policy provides liability insurance coverage to the claims of damages made by the E-Ferol class against the Revco defendants."  3d Am. Compl. ¶ 51; *see also id.* at ¶ 52.

> The [DJA] does not create a substantive cause of action.  A declaratory judgment action is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law.  Federal courts have broad discretion to grant or refuse declaratory judgment.  Since its inception, the DJA has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.  The DJA is an authorization, not a command.  It gives federal courts the competence to declare rights, but it does not impose a duty to do so.

*Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted).  Because the court is abstaining under the *Burford* abstention doctrine from deciding the class plaintiffs' constitutional claims against MICT, it declines in its discretion to decide whether the Mission policy provides liability coverage to the class plaintiffs.

- 19 -

IV

The court turns finally to the class plaintiffs' motion for leave to amend their complaint.

A

The class plaintiffs move for leave to amend to clarify their constitutional and common law claims related to MICT, dismiss Mission as a party to this suit, and add as a party Commissioner Jones, the California Insurance Commissioner, in his capacity as receiver, trustee, and fiduciary of the Mission insolvency. MICT opposes the motion. It contends, first, that the court should stay briefing on the motion for leave to file an amended complaint until the court has resolved the issues raised in MICT's motion to dismiss or abstain. MICT posits, second, that the court should deny the motion because the amendment is futile.

B

The class plaintiffs seek leave to amend under Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Granting leave to amend, however, "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. Unit A July 1981)). The court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Id.* (citing cases).

- 20 -

In opposing the class plaintiffs' motion, MICT contends that the proposed amendments are futile because the amended complaint does nothing to avoid the abstention doctrines raised by MICT and because suing the Commissioner in his official capacity as trustee of MICT is no different than suing MICT. The court concludes that these grounds are insufficient to support denying leave to amend. As this court has frequently noted,

> the court's almost unvarying practice when futility is raised is to address the merits of the claim or defense in the context of a Rule 12(b)(6) or Rule 56 motion. The court only infrequently considers the merits of new causes of action in the context of Rule 15(a). The court prefers instead to do so in the context of a Rule 12(b)(6) or Rule 56 motion, where the procedural safeguards are surer.

*Garcia v. Zale Corp.*, 2006 WL 298156, at *1 (N.D. Tex. Feb. 1, 2006) (Fitzwater, J.) (quoting *Poly-Am., Inc. v. Serrot Int'l Inc.*, 2002 WL 206454, at *1-2 (N.D. Tex. Feb. 7, 2002) (Fitzwater, J.). Accordingly, the court grants the class plaintiffs' motion for leave to amend.

## C

In granting the class plaintiffs' motion, the court does not suggest that the amended complaint will warrant reconsidering the ruling on abstention. The class plaintiffs in fact relied on the contents of the proposed fourth amended complaint when responding to MICT's motion. The allegations of the amended complaint do not appear to alter the court's decision to abstain from deciding the class plaintiffs' equitable constitutional claims against MICT. Accordingly, unless the class plaintiffs request that the court reconsider its abstention decision as it applies to the class plaintiffs' fourth amended complaint, the court will abstain

under *Burford* from deciding the class plaintiffs' constitutional claims seeking injunctive relief against MICT, and, for the reasons discussed above, will decline to consider the class plaintiffs' request for a declaratory judgment holding that the Mission policy provides liability insurance coverage for the causes of action that the class plaintiffs have asserted against the Revco defendants.[7]

\*   \*   \*

Accordingly, the court denies MICT's December 1, 2011 motion to dismiss complaint pursuant to Rule 12(b)(6) and grants MICT's alternative motion to abstain under the *Burford* abstention doctrine.[8]  The court abstains from exercising jurisdiction over the class plaintiffs'

_____

[7]The fourth amended complaint arguably presents an even more compelling reason for the court to abstain because the class plaintiffs specifically seek a determination that they

> complied with the requirements of Section 1025, of the California Insurance Code, and the rule in *Garamendi v. Mission Insurance Co.*, such that the 243 claims filed by Revco before the September 12, 1987 bar date constitute sufficient and substantial compliance with said sections of the Code such that E-Ferol claims should be allowed and processed according to law.

4th Am. Compl. ¶ 66(n).  To grant this relief, it would be necessary for the court to resolve whether, under California law, the filing by Revco of 243 claims in 1987 constituted "substantial compliance" with the provisions of Cal. Ins. Code § 1025 by the class plaintiffs. This question is unsettled under California law, thus tipping the Fifth Circuit factors even more heavily in favor of abstention under *Burford*.

[8]The class plaintiffs include in their fourth amended complaint various legal claims against MICT.  These claims do not appear to be subject to dismissal under the *Burford* abstention doctrine because of their legal nature.  *See Quackenbush*, 517 U.S. at 730-31.  But these claims could be subject to a stay pending disposition in California of the parts of the class plaintiffs' claims as to which the court is abstaining.  *See, e.g.*, *I-77 Props., LLC v.*

constitutional claims against MICT, and it declines in its discretion to exercise jurisdiction over the class plaintiffs' claim seeking a declaratory judgment regarding policy coverage. The court grants the class plaintiffs' March 1, 2012 motion for leave to file fourth amended original complaint-class action. But its decision today regarding abstention will apply to the fourth amended complaint unless the class plaintiffs request that the court reconsider the ruling as it applies to the fourth amended complaint. The court denies as moot MICT's December 1, 2011 motion for judicial notice of court records. And it denies as moot the class plaintiffs' December 16, 2011 motion for extension of time to respond to MICT's motion to dismiss or abstain.

        **SO ORDERED.**

        July 16, 2012.


                                        _____
                                        SIDNEY A. FITZWATER
                                        CHIEF JUDGE

---

*Fairfield Cnty.*, 288 Fed. Appx. 108, 111 (4th Cir. 2008) (holding that district court did not abuse discretion in dismissing equitable claims under *Burford* abstention doctrine and staying proceedings as to plaintiff's 42 U.S.C. § 1983 claims for damages); *Adrian Energy Assocs. v. Mich. Public Serv. Comm'n*, 481 F.3d 414, (6th Cir. 2007) (remanding case in which district court dismissed claims based on *Burford* abstention to stay rather than dismiss plaintiff's complaint until state proceedings had concluded, but noting that "[i]f the state court rules on all aspects of plaintiffs' state court appeal, their federal claims will likely be precluded by the doctrine of res judicata because their pending state claims . . . are essentially identical to the claims in the federal lawsuit.").