IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

VICTORIA KLEIN, et al.,           §
                                  §
                Plaintiffs,       §
                                  § Civil Action No. 7:03-CV-102-D
VS.                               § (Consolidated with
                                  § Civil Action No. 7:09-CV-094-D)
                                  §
FEDERAL INSURANCE CO.,            §
a/k/a CHUBB GROUP OF              §
INSURANCE COMPANIES, et al.,      §
                                  §
                Defendants.       §

MEMORANDUM OPINION
AND ORDER

In this lawsuit arising from deaths and personal injuries resulting from the

administration of the vitamin E supplement E-Ferol Aqueous Solution ("E-Ferol"), the court

has approved the settlement of the class action, and only an insurance coverage dispute

between the class plaintiffs[1] and defendant Federal Insurance Co. ("Federal"), an excess

coverage carrier, remains to be litigated.  The class plaintiffs move under Fed. R. Civ. P. 37

to compel Federal to provide responses to requested discovery.  For the reasons that follow,

the court grants the motion in part and denies it in part.

---

[1]The class plaintiffs are members of a certified class of persons or are the legal
representatives of persons who, during the period from November 1, 1983 until April 30,
1984, were administered E-Ferol and died or were injured as a result.  *Klein v. O'Neal, Inc.*,
705 F.Supp.2d 632, 640 (N.D. Tex. 2010) (Fitzwater, C.J.) ("*Klein III*").

I

Because this case is the subject of several prior opinions,[2] the court will recount only the background facts and procedural history necessary to understand the present decision.

Federal provided excess liability insurance coverage to Revco D.S., Inc. ("Revco") and Retrac, Inc. (formerly Carter-Glogau Laboratories, Inc.) (" Carter") in the E-Ferol class action.  The class plaintiffs move under Rule 37 to compel Federal to (1) produce all documents in its possession that were obtained from the E-Ferol Document Depository ("Depository"); (2) provide all documents responsive to 37 specific requests for production; (3) provide all documents requested in the class plaintiffs' requests for production nos. 11 and 12; (4) answer plaintiff Victoria Klein's ("Klein's") interrogatories nos. 3, 4, and 8 and plaintiff Ashley Swadley's ("Swadley's") interrogatories nos. 1, 2, 3, and 8; (5) provide all documents listed in Federal's redacted/withheld documents log; (6) provide all documents withheld in Federal's privilege log, except for those documents in which only Federal personnel communicated with the Seeley, Savidge, Ebert & Gourash Co., LPA law firm ("Seeley") or its representative; and (7) provide to the class plaintiffs as assignees of Revco all documents obtained by Federal from the Depository and other defense documents in the

---

[2]*See, e.g., Klein v. Fed. Ins. Co.*, 2012 WL 2886679 (N.D. Tex. July 16, 2012) (Fitzwater, C.J.); *Klein III*, 705 F.Supp.2d 632; *Klein v. O'Neal, Inc.*, 2009 WL 3573849 (N.D. Tex. Oct. 30, 2009) (Fitzwater, C.J.); *Klein v. O'Neal, Inc.*, 222 F.R.D. 564 (N.D. Tex. 2004) (Buchmeyer, J.).

possession of Federal or its representatives.[3]  Federal opposes the motion.

II

The court considers together categories 1 and 2 and the part of category 7 of the class plaintiffs' motion in which they seek the production of documents that Federal obtained from the Depository.

A

The Depository is a collection of documents assembled by the Thompson, Coe law firm in connection with the defense of Revco and other E-Ferol defendants by Thompson, Coe and other defense counsel.  According to the class plaintiffs, the Depository contains the following: numerous U.S. Food and Drug Administration and U.S. Department of Justice documents; extensive business records from O'Neal, Jones & Feldman ("O'Neal"), Revco, and Carter concerning the entire E-Ferol matter; the transcript of the criminal trial and exhibits; documents from the congressional investigation of E-Ferol; and numerous depositions, pleadings, reports, medical records, expert reports, and documents from civil claims for damages due to E-Ferol.  The class plaintiffs allege that, because Federal is a party to various joint defense agreements with the insurance carriers defending the E-Ferol class action, Federal is able to access the Depository.  The class plaintiffs contend that they have had only "limited access" to the Depository.  Ps. Br. 8.

---

[3]The class plaintiffs also request that the court order that any document not produced cannot be used in the trial of this case.  The court denies this request at this juncture.  *See, e.g.,* Rule 37(c)(1) (permitting use of information to supply evidence at trial if failure to disclose or supplement is substantially justified or harmless).

- 3 -

In response to 37 of the class plaintiffs' 75 requests for production, Federal responded with objections and then stated: "[w]ithout waiving the foregoing objections, Federal states that the responsive documents may be found in the [Depository]." Ps. Br. 7.[4] Federal also stated in its Rule 26(a)(1) disclosures:

> Federal states that the relevant documents in its possession include: . . . Documents from the [Depository], including, but not limited to: (1) underlying plaintiffs' pleadings, discovery and medical records; (2) deposition transcripts of [Carter] and [O'Neal] employees, plaintiffs and hospital personnel; (3) [Carter] defense counsel pleadings, discovery, deposition transcripts and other file materials; (4) trial transcripts; (5) documents received from the Food and Drug Administration concerning its investigation of [Carter]; and (6) . . . internal documents from [Carter], [O'Neal] and CVS Revco D.S., Inc[.]

Ps. App. 86.

The class plaintiffs move to compel Federal to produce copies of each document from the Depository to which Federal referred in its initial disclosures and when responding to each of the pertinent requests for production. The class plaintiffs argue that, by simply referring to the huge collection of documents in the Depository and not supplying copies of the documents, Federal has not complied with the initial disclosure requirements of Rule 26 and has not properly responded under Rule 34 to the requests for production.

Federal responds by noting that it objected on five grounds to the class plaintiffs' requests, and that, without waiving these objections, it stated that responsive documents

---

[4]Federal responded this way to requests for production nos. 6, 7, 8, 10, 14, 15, 17, 18, 24, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 71, 72, 74, and 75.

could be found in the Depository.  Federal maintains that the class plaintiffs have had equal access to the Depository because it is in the possession of a third party; that Federal has had no control over the Depository; and that if the class plaintiffs feel they have not had adequate access, they should take this up with CVS Revco D.S., Inc. ("CVS")[5] or any other party who allegedly has limited their access.  Federal also points out that it was unaware that the class plaintiffs had reviewed documents in the Depository; that Federal was unaware of the existence of the Depository until made aware by class plaintiffs' counsel; that Federal has had no control over the Depository and was not involved in limiting any review of documents that may have occurred to protect CVS's attorney-client privilege or work-product protection; and it was unaware which documents the class plaintiffs may have requested for copying and has not requested that such documents be produced to it.

Federal also maintains that, regardless of the class plaintiffs' access to the Depository, the documents Federal selected from the Depository are protected from disclosure as attorney work-product.  Federal posits that its attorneys selected documents for copying in connection with this lawsuit, and that its counsels' selection of the documents from the Depository reflects their "mental impressions, conclusions, opinions, or legal theories" and is thus protected from disclosure.  D. Br. 13.

---

[5]In 1997 Revco merged with CVS Corporation, and the new corporation was named CVS Revco D.S., Inc.

B

The court need not address Federal's arguments about the class plaintiffs' access to the Depository because, subject to a valid objection, Federal is obligated under Rule 34 to produce to the class plaintiffs for inspection and copying all requested documents within its "possession, custody, or control."[6]  It is undisputed that, in categories 1 and 7, the class plaintiffs only seek documents in Federal's possession (or the possession of its

---

[6]The class plaintiffs rely on Rule 26 to compel Federal to produce the documents at issue.  But Rule 26(a)(1)(A)(ii) does not require that a party produce documents.  It gives a party the option of providing a "copy" of an identified document "or a description by category and location" of the documents that "the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Rule 26(a)(1)(A)(ii).  The "duty to disclose is not synonymous with a duty to produce." *Forbes v. 21st Century Ins. Co.*, 258 F.R.D. 335, 337 (D. Ariz. 2009) ("While some sections of Rule 26 require information be both disclosed and produced, Rule 26(a)(1)(A)(ii) only requires parties to provide notice regarding documents[.]"); *see also Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, 2008 WL 5173109 (D. Kan. Dec. 10, 2008) ("While Fed. R. Civ. P. 26(a) *allows* initial disclosures to be made by producing copies of relevant documents, the rule does not require either party to actually produce copies of documents. A party may opt to provide a description of the documents by category and location."); *Sizemore v. Wal-Mart Stores, Inc*., 2006 WL 1698291, at *3 (S.D. Tex. June 16, 2006) ("Rule 26(a) . . . requires only that the documents be described by category and location," and, upon receiving such description, the opposing party may "then request production of the described documents" under Rule 34(b)).

The class plaintiffs assert:

> [t]he [D]epository is not indexed, catalogued, or kept in any particular order time wise or by any other method, but merely placed in storage.  Simply referring to that [D]epository is not the designation of documents required by Rule 26 and the full disclosure requirements the courts have routinely enforced requiring the discovery.

Ps. Reply 5.  To the extent the class plaintiffs intend to argue that Federal's designation of large numbers of documents kept in the Depository is insufficient under Rule 26(a)(1)(A)(ii), the court need not reach this argument in view of its conclusion that Federal must produce these documents under Rule 34.

representatives).  In category 2, the class plaintiffs seek production of documents that may

not be in Federal's possession or custody, but they are under its control because it has the

ability to access and obtain them from the Depository.  *See, e.g., Ice Corp. v. Hamilton

Sundstrand Corp.*, 245 F.R.D. 513, 516 (D. Kan. 2007) ("[C]ontrol comprehends not only

possession but also the right, authority, or ability to obtain the documents." (quoting *Super

Film of Am., Inc., v. UCB Films, Inc.*, 219 F.R.D. 649, 651 (D. Kan. 2004))).  Because the

class plaintiffs only seek documents within Federal's possession, custody, or control, the

dispositive question is whether Federal has a valid objection to producing the documents, that

is, whether it can withhold production based on the attorney work-product doctrine.

"The burden of proving the existence of . . . the applicability of the work product

immunity doctrine is on the party claiming protection." *Varo, Inc. v. Litton Sys., Inc.*, 129

F.R.D. 139, 141 (N.D. Tex. 1989) (Fitzwater, J.).  Federal correctly argues that courts have

recognized that "the selection and compilation of documents by counsel . . . in preparation

for pretrial discovery falls within the highly-protected category of opinion work product."

*Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *see also SEC v. Brady*, 238 F.R.D. 429, 442

(N.D. Tex. 2006) (Ramirez, J.) ("documents, including business records, that were

specifically selected and compiled by a party or its representative in preparation for litigation

are opinion work product because the mere acknowledgment of their selection would reveal

mental impressions concerning the potential litigation." (citing *Petersen v. Douglas Cnty.

Bank & Trust Co.*, 967 F.2d 1186, 1189 (8th Cir. 1992))).  But courts also hold that the

application of this doctrine "depends upon the existence of a real, rather than speculative,

concern that the thought processes of [the party's] counsel in relation to pending or anticipated litigation would be exposed." *Gould Inc. v. Mitsui Mining & Smelting Co.*, 825F.2d 676, 680 (2d Cir. 1987).  In *Sporck*—one of the cases on which Federal relies—the Third Circuit cited *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138 (D. Del.1982), in support of its conclusion that the doctrine applied.  *Sporck*, 759 F.2d at 316.  In *James Julian* the district court held that "[i]n selecting and ordering *a few documents out of thousands* counsel could not help but reveal important aspects of his understanding of the case."  *James Julian*, 93 F.R.D. at 144 (emphasis added).  And in *Sporck*, the narrow discovery request sought the production of "[a]ll documents examined, reviewed or referred to by Charles E. Sporck in preparation for the session of his deposition commencing May 16, 1983."  *Sporck*, 759 F.2d at 314.

In the present case, however, the court can only speculate that the thought processes of Federal's counsel would be exposed by the production of the documents in question.  In opposition to the class plaintiffs' motion, Federal has offered evidence from one of its attorneys that, in connection with this lawsuit, it obtained access to the Depository and "[o]ver the course of several days, multiple lawyers representing Federal reviewed the documents, and marked certain of them for copying.  Federal's lawyers selected and marked 4,007 documents consisting of 26,909 pages for copying."  D. App. 84-85.  There is no basis in the present record[7] to conclude that the production of thousands of pages from thousands

---

[7]The court is not adhering to a *per se* rule based on the number of pages, of documents, and/or of lawyers involved.  Each case necessarily turns on its facts.

of documents, selected by multiple lawyers would reveal the thought processes of Federal's counsel.  Federal has therefore failed to carry its burden of proving that production of the requested documents would violate the rights of Federal and its counsel to withhold the production of materials that qualify as attorney work-product.

Accordingly, the court grants the class plaintiffs' motion to compel regarding categories 1 and 2 and the part of category 7 of the class plaintiffs' motion in which they seek the production of documents that Federal obtained from the Depository.[8]  Federal must produce the documents within 21 days of the date this memorandum opinion and order is filed.[9]

III

The class plaintiffs seek in category 3 an order compelling Federal to produce the "additional agreements," including any joint defense agreement the class plaintiffs have requested in request for production no. 12, as well as all correspondence between Federal and Revco, as requested in request for production no. 11.  Federal responds that, with respect to request no. 11, it has included its claim correspondence with CVS and Retrac regarding the

---

[8]The court has not attempted to determine whether any discovery that is the subject of categories 1 and 2 is the subject of another claim of privilege.  *See, e.g., infra* § V(B) (addressing withheld documents identified in Federal's privilege log).  Assuming *arguendo* that Federal is entitled to withhold production on a basis that the court otherwise upholds in this memorandum opinion and order, the court's ruling upholding the privilege applies here.

[9]Counsel for the class plaintiffs and Federal have cooperated on several matters in this litigation.  The court assumes that, if Federal reasonably needs additional time to comply with this directive, the parties can agree to an extension of time.

class action and insurance coverage in the claim file that it already produced.  Federal posits that it has produced correspondence between Seeley and CVS and has only redacted portions of that correspondence relating to settlement discussions as opposed to the litigation or insurance coverage issues.  Concerning request no. 12, Federal maintains there are no additional agreements to which Federal is a party, other than the "Mutual Release Relating to Klein Class Action Among Participating Insurers and Non-Participating Insurer."  D. Br. 15.  The class plaintiffs do not address Federal's arguments in their reply.

In response to the class plaintiffs' requests for production, Federal has produced, with redactions, its entire underwriting file and claim file for the policy Federal issued to Revco, as kept in the ordinary course of business.  Other than the documents and portions of documents that Federal has withheld as privileged (which the court addresses below), Federal appears to have satisfied its production obligation with respect to requests for production nos. 11 and 12.  Accordingly, the court denies this basis of the class plaintiffs' motion to compel.

## IV

In category 4, the class plaintiffs move to compel answers to Klein interrogatories nos. 3, 4, and 8 and Swadley interrogatories nos. 1, 2, 3, 4, and 8.

### A

The court turns first to Swadley interrogatories nos. 1, 2, 3, and 4 (dealing with Revco's intent to injure and kill premature infants) and 8 (dealing with Federal's claim that Carter

produced product that failed to live up to warranties or representations).[10]

----

[10]Interrogatory No. 1:

> State all evidence and legal authority listing the names, addresses and telephone numbers of the witnesses and a complete description of the documents which support Federal's defense contention that Revco D.S., Inc. had knowledge that personal injury or death would flow directly and immediately from the formulation of E-Ferol by Carter-Glogau Laboratories, Inc. as alleged in Count I, paragraph 16 of Federal's answer.

D. Br. 15 (quoting D. App. 67).

Interrogatory No. 2:

> State all evidence and legal authority listing the names, addresses and telephone numbers of the witnesses and a complete description of the documents which support Federal's defense contention that Revco D.S., Inc. expected or intended the resulting injury as described in the Klein action to recipients of E-Ferol as alleged in Count I of Federal's answer.

*Id.* at 16 (quoting D. App. 68).

Interrogatory No. 3:

> State all evidence and legal authority listing the names, addresses and telephone numbers of the witness and a complete description of the documents which support Federal's defense contention that Revco D.S., Inc. had knowledge or the formulation and/or distribution of E-Ferol and that personal injury or death was expected or intended from the formulation and/or distribution of E[-]Ferol prior to the recall of E-Ferol on April 12, 1984.

*Id.* (quoting D. App. 68).

Interrogatory No. 4:

1

During the deposition of Steven Jakubowski ("Jakubowski"), Federal's Rule 30(b)(6) witness and corporate representative, the class plaintiffs' attorney asked what documents and/or witnesses[11] Federal intended to present concerning the policy exclusion for conduct that was "expected or intended" from the standpoint of the insured, as to both Revco and Carter/Retrac.   Ps. Br. 11.   Jakubowski was unable to provide an answer during his deposition, but he asked to be able to certify an answer when he supplemented other portions of his deposition testimony.[12]   In a November 6, 2013 letter, Federal provided a list of

> State all evidence and all legal authority for Federal's defense contention that the plaintiffs had a burden to "allocate" between covered claims and claims which coverage is afforded as alleged in Count I, paragraph 19, of Federal's answer.

*Id.* (quoting D. App. 68).

Interrogatory No. 8:

> State all evidence and legal authority listing the names, addresses and telephone numbers of the witnesses and a complete description of the documents which support Federal's defense contention that product liability and/or negligent misrepresentation under either the Federal policy or the Transit Casualty insurance policy are excluded from coverage as alleged in Count IV of Federal's answer, pointing out each part of the policy Federal relied upon, the factual evidence, witnesses, documents, and the legal authority relied upon for this defense.

*Id.* at 17 (quoting D. App. 70).

[11]The term "witnesses" refers to deposition witnesses.

[12]Federal's counsel interposed several objections to questions that asked Federal to identify specific witnesses and/or specific documents that it was relying on when claiming

witnesses it intends to rely on to support its defenses.  The class plaintiffs contend, however, that Federal has not identified any documents or depositions on which it relies, and that it has not indicated what topic or subject matter each witness will address.  They argue that they should not be made to wait and guess what documents or portions of depositions Federal may choose to include in its motion for summary judgment before attempting to locate evidence to rebut or respond to these matters.

Federal responds that it has adequately answered the Swadley interrogatories.  It maintains that the interrogatories seek information protected by the attorney-client privilege and work-product doctrine, call for speculation, and are premature and overly burdensome because "[a]t this point in the litigation, Federal has not determined which documents it intends to rely upon for summary judgment or other purposes."  D. Br. 17.

2

Federal's Rule 30(b)(6) witness—Jakubowski—requested during his deposition the option of certifying an answer to the class plaintiffs' question regarding the documents and witnesses that Federal intended to present concerning the policy exclusion for conduct that was "expected or intended" from the standpoint of the insured as to both Revco and Carter/Retrac.  Ps. Br. 11.  Although Federal appears to have provided the class plaintiffs

---

that the injuries to recipients of E-Ferol were either expected or intended from the standpoint of the insured.  Jakubowski ultimately responded to one of the questions of the class plaintiffs' counsel: "I don't remember the names of the key individuals.  Since we're going to supplement a couple other portions of my deposition, would you have any objection to my certifying an answer?"  Ps. App. 125.

some of the requested information, such as a list of potential witnesses, it has not provided all.  Accordingly, to the extent that Federal presently knows which documents and witnesses it intends to rely on in support of the policy exclusion for conduct that was "expected or intended" from the standpoint of the insured, it must identify these documents and witnesses within 21 days of the date this memorandum opinion and order is filed.  To the extent Federal later determines that there are other documents and/or witnesses on which it intends to rely, it must supplement its interrogatory answers as required under Rule 26(e)(1)(A).[13]

## B

The class plaintiffs move the court to order Federal to respond to Klein interrogatories nos. 3, 4, and 8.[14]

## 1

Federal maintains that the class plaintiffs have propounded far more than 25 interrogatories, including discrete subparts, in violation of Rule 33.  The class plaintiffs respond that the subparts of the Klein and Swadley interrogatories are not "discrete," but that each subpart inquires about the subject of the interrogatory, with alternative inquiries as subparts.  They argue that this is necessary "due to the refusal by Federal to either plead or admit so as to distinguish or differentiate between various entities listed in the Federal

---

[13]This memorandum opinion and order also qualifies as an order to supplement under Rule 26(e)(1)(B).

[14]The class plaintiffs' brief refers to interrogatories nos. 3 and 8, Ps. Br. 10, and 3, 4, and 8, *id.* at 19.  Because the disposition of the class plaintiffs' motion is the same, the court will assume that all three interrogatories are at issue.

policy." Ps. Reply 9 n.4. The class plaintiffs contend they discovered at the deposition of Federal's corporate representative that several different entities provided services and kept files for Federal. They maintain that, consequently, the clear documentation that Federal was on notice in 1984 of E-Ferol claims "was being obscured by Federal's claims that it had no knowledge of E-Ferol claims when, in fact, the documents were contained in the files of its subsidiaries." *Id.*

2

Rule 33 provides that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)." Interrogatory subparts are to be counted as discrete subparts only if they are not "logically or factually subsumed within and necessarily related to the primary question." *Krawczyk v. City of Dallas*, 2004 WL 614842, at *2 (N.D. Tex. Feb. 27, 2004) (Ramirez, J.) (citation and internal quotation marks omitted). "A single interrogatory that seeks information about related aspects of a party's claim does not necessarily contain discrete subparts that must be counted separately for purposes of Rule 33." *Faglie v. Meritage Homes of Tex., LLC*, 2013 WL 1608727, at *2 (N.D. Tex. Apr. 15, 2013) (Stickney, J.) (citations omitted). Klein interrogatory 1, subpart A, asks, in pertinent part, that Federal

> explain the defenses between Federal's answer in paragraphs 4, 11, 12, 20, 24, 25, 26, 29, 30, 31, and 32, and the Federal policy and The Chubb Corporation website history of the Chubb Corporation, Legal notice and 10K filings concerning the legal relationship between Federal and the Chubb subsidiaries as set

out above.

D. App. 19.  This constitutes a single interrogatory.  *See Faglie*, 2013 WL 1608727, at *2 ("Defendant's first interrogatory, which asked Plaintiffs to '[i]dentify each defect or damage at the Property for which [Plaintiffs] have asserted a claim,' constitutes a single interrogatory."); *see also Cardenas v. Dorel Juvenile Grp., Inc.*, 231 F.R.D. 616, 619-20 (D. Kan. 2005) (overruling objection that interrogatory that sought information about "each and every element of the design" that plaintiff contended was defective was actually multiple interrogatories that exceed limit of allowable interrogatories).  Counting this as a single interrogatory, the class plaintiffs have not exceeded the 25 interrogatory limit.

Federal also objects to the Klein interrogatories as improperly seeking privileged information, as calling for speculation, and as premature because "Class Plaintiffs are asking Federal to exhaustively marshal all evidence, facts and/or identify documents supporting its contentions and defenses, prior to the completion of discovery."  D. Br. 21.  Rule 33(b)(3) obligates Federal to "fully" answer the interrogatories, but Federal need not provide answers that it does not now have.  Federal is obligated under Rule 33 to respond to the class plaintiffs' interrogatories to the extent it is able to, and to supplement its responses, as required under Rule 26(e)(1)(A).[15]

The court therefore grants the class plaintiffs' motion to compel responses to Klein interrogatories nos. 3, 4, and 8.

_____

[15]As noted above, this memorandum opinion and order also qualifies as an order to supplement under Rule 26(e)(1)(B).

- 16 -

V

The court considers together categories 5 and 6, which address documents that Federal designates on its redacted/withheld document log as "reinsurance" information and on its privilege log as protected from disclosure by the "joint defense privilege," "joint defense group," and "attorney-client communications."

A

Federal withheld 25 documents[16] on the basis that they contain reinsurance information. The class plaintiffs argue that, under the Federal policy, notice can be given to the underwriting department, and because the withheld documents from Federal's underwriting department from 1984 through 1985 would have given Federal notice of the E-Ferol injury claims, all of the Federal/Chubb & Son, Inc. underwriting information is discoverable on the contested issue of notice.

Federal responds that courts generally refuse a policyholder's discovery request regarding reinsurance agreements and reinsurance communications for the purpose of interpreting the underlying policy; that courts often protect reinsurance information from discovery because this information is a critical aspect of an insurance company's financial stability and must, consequently, be maintained in strict confidence and protected from discovery; and that an insurer's decision to purchase reinsurance is based on internal business

---

[16]Plaintiffs contend that Federal withheld 35 documents on the basis that they contained "reinsurance information," Ps. Br. 14, but the page from the privilege log they cite reflects only 25 documents, *see* Ps. App. 150.

- 17 -

considerations unrelated to the insurer's evaluation of a particular claim or interpretation of any particular term in the underlying policies.

The class plaintiffs have demonstrated the relevance of certain reinsurance information to the question of notice, which is contested in this litigation. Federal addresses in only general terms the reasons courts refuse to allow the discovery of reinsurance agreements and communications. It does not show specifically why this discovery should be precluded in this case. As the class plaintiffs point out, the reinsurance information Federal seeks to withhold dates back nearly 30 years. The reasons for foreclosing discovery appear to lack force in these circumstances. And if Federal can demonstrate that its reinsurance information should be protected from public disclosure, it can seek by agreement or motion an order permitting it to produce these documents under the terms of a protective order.

The court grants the class plaintiffs' motion to compel Federal to produce the documents it withheld on the basis that the subject matter of the documents is "reinsurance information."

B

1

The class plaintiffs next seek to compel Federal to produce over 1,500 documents that it withheld on the basis of "joint defense privilege," "joint defense group," or "attorney-client communications." They argue that the entire defense file belongs to Revco as the insured and client of Federal, and to class plaintiffs, as assignees. The class plaintiffs posit that

- 18 -

Federal "waived as to Revco any attorney-client privilege to any conversation between its attorneys and its other insurance personnel, defense counsel, or personnel of defense counsel, all of whom had access to these documents." Ps. Br. 17.  Finally, they maintain that any joint defense agreement does not prohibit a party to the agreement such as Revco and its insurers from obtaining the materials used in its defense, the content of which is covered by the agreement.  Accordingly, the class plaintiffs move to compel Federal to produce all of the documents in both privilege logs, except those marked solely as attorney-client privilege and in which Seeley and Federal are shown to be the "author" and "recipient."

Federal responds that all of the documents listed on Federal's privilege log came from Federal's underwriting or claim file, not the Depository.  It contends that these documents are in large part reports from the law firm that represented defendants in the underlying class action and are privileged attorney-client communications relating to the defense of the underlying class action.  Federal maintains that "the Class Plaintiffs who were adverse to CVS and Retrac, are now seeking documents authored by CVS/Retrac's defense counsel and sent to CVS/Retrac's insurers that may have had defense and/or indemnity obligations to CVS/Retrac in the very case in which Class Plaintiffs were involved." D. Br. 24.  Because the assignment permits the class plaintiffs to seek coverage under the Federal policy but does not otherwise waive any attorney-client or work-product privilege, Federal maintains that the class plaintiffs are not entitled to these privileged documents.

2

As a threshold matter, it appears to be undisputed that the documents at issue are

- 19 -

confidential communications to which the attorney-client privilege, joint-defense privilege, or work-product doctrine would attach.[17]   The class plaintiffs do not challenge whether the documents are privileged; rather, they argue that the documents are not privileged *as to them* because Federal waived any privilege as to Revco, and, by virtue of the assignment of rights in the Non-Waiver Agreement ("NWA"), the class plaintiffs are entitled to all of the documents in Revco's defense file.

3

Under Texas law,[18] the attorney-client privilege prohibits disclosure of confidential communications made for the purpose of facilitating the rendition of professional legal services to the client.  Tex. R. Evid. 503(b)(1).  The privilege can be claimed by the client, or by the attorney on the client's behalf.  Tex. R. Evid. 503(c).  Generally, the voluntary disclosure of privileged communications to a third party results in a waiver of the privilege. Tex. R. Evid. 511.  There is an exception to this rule, however, found in Tex. R. Evid.

---

[17]The class plaintiffs argue that they are entitled to the "documents from the E-Ferol Depository"—which they allege are documents contained in files created by the attorneys who represented CVS, Revco, and Retrac—"because there is no privilege that Federal can exert against its own insured."  Ps. Reply 3.  This argument does not appear to be directed at the documents listed on Federal's privilege log, which Federal contends are not from the Depository.  *See* D. Br. 23 ("all of the documents listed on Federal's Privilege Log came out of Federal's underwriting or claim file—not the document Depository").

[18]Fed. R. Evid. 501 provides that, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.  Although in connection with other pending motions the parties have presented choice of law arguments in favor of applying Texas or Ohio law, neither party contends that Ohio law governs the court's resolution of the motion to compel.  Accordingly, the court will apply Texas law to Federal's claims of privilege.

503(b)(1)(C).[19]   This exception protects

> confidential communications made for the purpose of
> facilitating the rendition of professional legal services . . . by the
> client or a representative of the client, or the client's lawyer or
> a representative of the lawyer, to a lawyer or a representative of
> a lawyer representing another party in a pending action and
> concerning a matter of common interest therein.

Tex. R. Evid. 503(b)(1)(C).  Texas courts "have generally applied Rule 503(b)(1)(C) to joint

defense situations where multiple defendants, represented by separate counsel, work together

in a common defense."  *In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 51 (Tex. 2012); *see also*

*In re Dalco*, 186 S.W.3d 660, 666 (Tex. App. 2006, no pet.) ("When applicable, the joint

defense privilege cloaks communications with confidentiality where a joint defense effort

or strategy has been decided upon and undertaken by the parties and their respective

counsel." (citations and internal quotation marks omitted)).

"Work product protections, unlike the attorney-client privilege, are held by the

attorney as well as the client."  *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir.

2009).[20]  "[T]he work product privilege belongs to both the client and the attorney, either one

---

[19]Although it is sometimes referred to as the "joint defense" privilege, *see In re XL
Specialty Ins. Co.*, 373 S.W.3d 46, 50-51 (Tex. 2012), Tex. R. Evid. 503(b)(1)(C) does not
create an independent privilege, but rather "an exception to the general rule that no attorney-
client privilege attaches to communications that are made in the presence of or disclosed to
a third party."  *In re Siegel*, 198 S.W.3d 21, 27 (Tex. App. 2006, no pet.).

[20]"[T]he issue of whether documents are exempt from discovery under the attorney
work product doctrine is governed by federal law in diversity cases because work product
is not a substantive privilege within the meaning of Federal Rule of [Evidence] 501."
*Orchestrate HR, Inc. v. Trombetta*, 2014 WL 884742, at *2 (N.D. Tex. Feb. 27, 2014)
(Horan, J.) (alteration added) (citing *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875

of whom may assert it. Thus, a waiver by the client of the work product privilege will not deprive the attorney of his own work product privilege, and vice versa." *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994) (per curiam).

Federal maintains that, in large part, the documents listed on its privilege log are "reports from the Akin Gump law firm, who was representing Defendants in the underlying Class Action and are privileged attorney-client communications relating to the defense of the underlying Class Action." D. Br. 23-24. The so-called "joint defense privilege" of Rule 503(b)(1)(C) applies to communications that occurred between Revco's counsel and Federal's counsel in connection with their defense of the underlying class action. It also applies to communications between Revco and its own counsel that were shared with Federal's counsel and the other insurance company defendants' counsel in connection with the defense in the class action. *See Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex. 1996) ("The attorney's duty to preserve confidences shared under a joint defense agreement is no less because the person to whom they belong was never a client. The attorney's promise places him in the role of a fiduciary, the same as toward a client." (citations omitted)).

The class plaintiffs contend that the entire defense file belongs to Revco as the insured and client of Federal and, in turn, to the class plaintiffs, as assignees of Revco, and that this file should therefore "be ordered turned over to the class plaintiffs immediately." Ps. Br. 17.

---

(5th Cir. 1991); *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 476 (N.D. Tex. 2004) (Kaplan, J.)).

In support of this argument, they rely on *Resolution Trust Corp. v. H____, P.C.*, 128 F.R.D. 647, 649-50 (N.D. Tex. 1989) (Sanders, J.), in which the court held that the entire contents of an attorney's client's file belonged to the client, and neither the attorney-client privilege nor the work-product doctrine applied to protect the documents in the client's file from disclosure to the client.  Unlike in *H____, P.C.*, in this case, the class plaintiffs are not seeking to obtain files from their own attorneys.  Rather, they are seeking to obtain Revco's files from attorneys who never represented the class plaintiffs in connection with this case and do not have an attorney-client or any other type of fiduciary relationship with them.

The court finds more persuasive two cases in which Texas courts of appeals specifically addressed whether an assignee was entitled to the entire defense file of the assignor absent explicit language waiving the assignor's attorney-client privilege.  In *In re Cooper*, 47 S.W.3d 206 (Tex. App. 2001, no pet.), the court addressed whether an insured waived the attorney-client privilege when he executed an assignment of his claims against his insurers.  *Id.* at 207.  The assignment in *Cooper* provided, in relevant part, "I, the undersigned . . . hereby assign, grant, and convey all rights, title and interest in and to any causes of action that I may have against Allstate Insurance Company . . . by virtue of[] my insurance policy[.]"  *Id.* at 208.  The court held that this language "does not provide for Cooper to waive or assign any right he had to assert his attorney-client privilege," "does not provide for him to voluntarily disclose or consent to disclosure of any significant part of the matters protected by his attorney-client privilege," "[n]or does it even provide for Cooper to cooperate as to matters giving rise to his claims against his insurers."  *Id.* at 209.

Accordingly, the court held that the trial court abused its discretion in finding that the insured waived his privilege and ordering the insured's attorneys to produce their file materials from his previous lawsuit, thereby requiring disclosure of privileged communications. *Id.* at 207.

In *In re Hicks*, 252 S.W.3d 790 (Tex. App. 2008, no pet.), the insured filed for bankruptcy and assigned to the Chapter 13 bankruptcy trustee all claims, rights, and causes of action relating to a personal injury suit that the insured's employee had filed against him (the "Taylor suit"). *Id.* at 792. Several years after the assignment, the bankruptcy trustee requested (and later sought, during discovery) from the attorney retained by the insurer to defend the Taylor suit a complete copy of the attorney's file. *Id.* The trial judge ordered the insured and the attorney to produce the requested discovery. *Id.* at 793. The court of appeals held that it was an abuse of discretion to order the production of the privileged documents. *Id.* at 796. It explained that "[a]n assignment of rights and claims does not automatically include a waiver of attorney-client privilege unless specifically stated in the language of the assignment." *Id.* at 794 (citing *In re Cooper*, 47 S.W.3d at 209). Because "[w]aiver is the intentional relinquishment of a known right made expressly or indicated by conduct that is inconsistent with an intent to claim the right," *id.* at 795 (citing *United States Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 357 (Tex. 1971)), and because "the language of the assignment in the bankruptcy order [did] not provide for [the insured] to waive or assign any right he had to assert his attorney-client privilege," the court held that the privilege was not waived, *id.*

Similar to the assignments in both *In re Cooper* and *In re Hicks*, in this case, the NWA

provides:

> The CVS Class Defendants hereby assign to the E-Ferol Class, by and through its Class Representatives: i) all of their rights, if any, under the Federal Policy to seek indemnity coverage, limited to the Escrow Payment, for the claims asserted against them in the Class Action; and ii) all of their rights, if any, under the Federal Policy or applicable law to seek attorney's fees and costs if prevailing in the Consolidated Declaratory Judgment Actions.

P. App. 7. Nothing in the language of this assignment suggests that Revco intended to waive the attorney-client privilege or to assign to the class plaintiffs the right to assert the privilege. Nor is there any suggestion that Revco and its counsel intended to waive work-product protection. Therefore, by assigning its rights to the class plaintiffs without specific language addressing the attorney-client or any other privilege, Revco did not waive these privileges.

In sum, the attorney-client privilege may only be waived by Revco (and the work-product doctrine may only be waived by Revco and its attorneys); under Tex. R. Civ. P. 503(b)(1)(C), Revco did not waive the privilege by sharing attorney-client communications with Federal's attorneys in connection with their joint defense in the underlying class action; and Revco did not waive or assign the right to assert either the attorney-client privilege or the work-product protection in its assignment of its right to pursue Federal in the NWA. Accordingly, the court denies the class plaintiffs' motion to compel Federal to produce the documents identified in its privilege log.

C

The class plaintiffs conclude by making a general argument—apparently related to all undisclosed and withheld discovery—that it is a breach of fiduciary duty for Federal to use discovery obtained from the Depository against its insured (Revco), and that it cannot use Revco's file without revealing the documents on which it intends to rely until summary judgment or trial. The class plaintiffs maintain that such prejudice to an insured is prohibited by Texas common law and the Texas Insurance Code, and that, even if this is not a breach of fiduciary duty, the federal rules do not permit such action particularly where, as here, the class plaintiffs have not had all access to the documents. The class plaintiffs therefore ask that the court "order Federal to answer fully and produce all documents referred to and all materials obtained from the Depository, a part of Revco's file and prohibit the use of any document not produced or, if produced, not readily accessible by [the] class plaintiffs from the [D]epository." Ps. Br. 19.

Federal responds to this argument only in a footnote, contending that the claim that Federal somehow violated a fiduciary duty to its insured is "non-sensical," D. Br. 25 n.8, and asserting that, at the time it reviewed the documents in the Depository, the lawsuit between Federal and CVS was already pending. Federal therefore maintains that there was no question that CVS knew Federal was reviewing documents in the Depository for purposes of this litigation.

The class plaintiffs reply that Federal is currently breaching its fiduciary duty to its insured by refusing to produce the insured's file, correspondence between it and its insured,

and the portions of the Federal file that it obtained from the Depository without its insured's knowledge, particularly since it had no defense obligation.

The court is unable to discern from the class plaintiffs' briefing a basis to order that Federal produce additional discovery based on a theory of breach of fiduciary duty. Accordingly, the court denies this ground of their motion without prejudice to considering the argument, if necessary, in the context of another discovery motion. To the extent that the part of category 7 that the court has not addressed *supra* at § II(B) relates to this ground for the class plaintiffs' motion,[21] the court denies the motion to compel in this respect.

\* \* \*

For the foregoing reasons, the class plaintiffs' second motion for order compelling Federal's discovery responses pursuant to Rule 37 is granted in part and denied in part.

**SO ORDERED.**

July 14, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE

---

[21]In addition to requesting production of all documents obtained from the Depository, which the court has addressed *supra* at § II(B), category 7 seeks to compel Federal to produce other defense documents in the possession of Federal or its representatives.

- 27 -