IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| VICTORIA KLEIN, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 7:03-CV-102-D |
| VS. | § | (Consolidated with |
| | § | Civil Action No. 7:09-CV-094-D) |
| FEDERAL INSURANCE CO., | § | |
| a/k/a CHUBB GROUP OF | § | |
| INSURANCE COMPANIES, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this insurance coverage dispute between the plaintiffs in a certified class action involving the administration of the vitamin E supplement E-Ferol Aqueous Solution ("E-Ferol") and defendant Federal Insurance Co. ("Federal"), an excess liability carrier, the court addresses the following motions: Federal's motion to dismiss bad faith claims in plaintiffs' fifth amended complaint; the class plaintiffs' motion to dismiss defenses and counterclaims in Federal's amended answer to plaintiffs' fifth amended complaint pursuant to Fed. R. Civ. P. 8, 9, 12(b)(6), 12(c), and 12(f); and the class plaintiffs' motion for judgment on the pleadings pursuant to Rule 12(c). For the following reasons, the court grants Federal's motion; grants in part and denies in part the class plaintiffs' motion to dismiss Federal's defenses and counterclaims; and denies the class plaintiffs' motion for judgment on the pleadings. The court grants Federal leave to file a second amended answer to plaintiffs' fifth amended complaint.

I

The class plaintiffs are members of a certified class of persons or the legal representatives of persons who, during the period from November 1, 1983 until April 30, 1984, were administered E-Ferol and died or were injured as a result.[1]  *Klein v. Fed. Ins. Co.*, 2014 WL 239652, at *1 (N.D. Tex. Jan. 22, 2014) (Fitzwater, C.J.) ("*Klein V*").  In 2003 the putative class sued, among others, Carter-Glogau Laboratories, Inc. ("Carter"),[2] a wholly owned subsidiary of Revco D.S., Inc. ("Revco"),[3] alleging claims for negligence, strict liability, and negligent misrepresentation.  *Id.*

After the class was certified, *see Klein v. O'Neal, Inc.*, 222 F.R.D. 564 (N.D. Tex. 2004) (Buchmeyer, J.), Federal brought a declaratory judgment action in the Northern District of Ohio ("Ohio Action") against CVS Revco D.S., Inc. ("CVS"), seeking a declaratory judgment that it had no duty to defend or indemnify CVS in the E-Ferol class

---

[1]In deciding Federal's Rule 12(b)(6) motion and the class plaintiffs' motion under Rules 12(b)(6) and 12(c), the court construes the fifth amended complaint in the light most favorable to the class plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in their favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  In deciding the class plaintiffs' motion under Rules 12(b)(6) and 12(c), the court construes Federal's answer and counterclaims in Federal's favor.

[2]Carter, with input and information provided from O'Neal, Jones & Feldman, Inc. a/k/a O'Neal, Inc., manufactured E-Ferol.  In December 1986 certain assets of Carter were sold, including the use of the name "Carter-Glogau Laboratories, Inc."  The class plaintiffs allege that the liabilities, including the liability for E-Ferol claims, remained with the corporate entity, which was then renamed Retrac, Inc.

[3]In 1997 Revco merged with CVS Corporation and the new corporation was named CVS Revco D.S., Inc.  *Klein V*, 2014 WL 239652, at *1 n.3.  After a subsequent merger, the corporation's name changed to CVS Caremark Corp.

action under an insurance policy issued by Federal to Revco ("Federal Policy").[4] *Klein V*, 2014 WL 239652, at *1. The Ohio Action was eventually transferred to this court, and, under the terms of an October 7, 2009 "Non-Waiver Agreement" ("NWA") between Federal and CVS,[5] was consolidated with the instant certified class action. *Id.*

On October 7, 2009 the plaintiff class entered into a Settlement Agreement and Release ("Settlement Agreement") with defendant Retrac, Inc. ("Retrac"), among others, resolving the claims between the parties over the manufacture and distribution of E-Ferol. The settlement was funded by liability insurance from defendants' excess coverage insurance carriers. Federal did not participate in funding the class settlement, however,[6] and it disputed that it had a duty to indemnify its insured, Retrac, for the class plaintiffs' claims. On April 9, 2010 the court approved the class settlement. *Klein v. O'Neal*, 705 F.Supp.2d 632 (N.D. Tex. 2010) (Fitzwater, C.J.). On April 13, 2011, under the terms of the Settlement Agreement and the NWA, CVS and Retrac executed an assignment that purported to assign

---

[4]The Federal Policy is an excess liability insurance policy that "followed form" of the underlying liability coverage supplied by Transit Casualty Co. ("Transit Policy"). According to the fifth amended complaint, the Federal Policy adopted as its own the insuring agreement terms, definitions, and exclusions (but not the conditions) of the Transit Policy, except as noted in its own policy.

[5]The NWA was entered into by the class plaintiffs, Federal, CVS Caremark Corp., Retrac, and various other excess liability insurance carriers.

[6]Two other excess insurance carriers—International Insurance Co., a/k/a Westchester Fire Insurance Co., n/k/a ACE USA, Inc. ("Westchester") and Mission Insurance Co. ("Mission")—did not participate in funding the class action settlement. The class plaintiffs have settled or dismissed their claims, however, against all defendants other than Federal. *See Klein V*, 2014 WL 239652, at *2 n.7.

to the class plaintiffs all of their rights to seek indemnity coverage against Federal and the other non-settling insurance companies.

In their fifth amended complaint, the class plaintiffs seek a judgment declaring that the Federal Policy covers the liability and damages allegations by the class plaintiffs, and that Federal, among others, must indemnify the class plaintiffs, as assignees of Retrac and Revco, to the full extent of the $110 million settlement, as set out in the Settlement Agreement. They also seek to recover damages and attorney's fees.  In Federal's amended answer to the class plaintiffs' fifth amended complaint, it asserts thirteen defenses or affirmative defenses and also brings five counterclaims seeking declaratory judgment.

Federal moves to dismiss the class plaintiffs' bad faith claims under Rule 12(b)(6), contending that these claims have been released and are completely barred by the NWA.  The class plaintiffs move to dismiss Federal's defenses and counterclaims, and they also move for a judgment on the pleadings.

II

"In deciding [Federal's] Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' [fifth] amended complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (alteration and internal quotation marks omitted)).  To survive Federal's motion, the fifth amended complaint must allege enough facts "to state a claim to relief that is plausible on

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level [.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

### III

The court turns first to Federal's motion to dismiss the class plaintiffs' bad faith claims.

### A

Federal contends that the class plaintiffs alleged that Federal engaged in bad faith and unfair and deceptive acts or practices by failing to settle claims with CVS, its insured, and is thus liable for violating Tex. Ins. Code Ann. §§ 541.060-542 and under Ohio common law. Federal maintains that these claims are "completely barred" under the NWA, in which the class plaintiffs expressly waived all claims and causes of action for bad faith premised on

Texas and Ohio law.  D. Br. 3.  Federal maintains that, because the NWA prohibits the class plaintiffs from recovering any amounts—including damages, costs, expenses, attorney's fees, or interest—"arising from Federal's acts or omissions in connection with E-Ferol Claims," *id.* at 5, and because the class plaintiffs "have not asserted any factual or legal theory entitling them to relief on their new claims of bad faith against Federal," *id.*, Federal is entitled to dismissal of the class plaintiffs' claims based on Tex. Ins. Code Ann. §§ 541 and 542 and under Ohio common law on good faith processing and settlement of claims.

The class plaintiffs respond, *inter alia*, that, although the NWA waives various causes of action for bad faith or extra-contractual liability damages, it clearly permits them to seek attorney's fees and costs (in addition to funds disbursed from the escrow payment).  They contend that the NWA does not limit the choice of legal theories on which they can seek to recover attorney's fees, costs, and interest, and they clarify that they are not seeking any *damage* award for bad faith or extra-contractual claims, but are instead seeking only reasonable attorney's fees, costs, and interest, which they maintain can be awarded as a result of bad faith or extra-contractual liability.

Federal replies that Retrac and CVS assigned the class plaintiffs only the right to seek indemnity coverage, including recovery of the escrow payment, and the right (if any) under the Federal Policy or applicable law to seek attorney's fees and costs for prevailing in their declaratory judgment action.  Federal maintains that while the NWA similarly permits the class plaintiffs to seek attorney's fees and costs for prevailing in the consolidated declaratory judgment actions, it does not enable them to seek attorney's fees and costs for bad faith

conduct or any other theory of their choosing.  Federal contends that, although the class plaintiffs argue that they are not seeking any damage award for bad faith or extra-contractual claims, attorney's fees are an element of damages in the context of a bad faith claim brought under Texas or Ohio law.

## B

Waiver is an affirmative defense.  *See* Rule 8(c)(1).  "[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate."  *Kansa Reinsurance Co. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ("Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.").  For purposes of a Rule 12(b)(6) motion, the pleadings include the complaint, documents attached to the complaint, as well as "[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims[.]"  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (internal quotation marks and citation omitted).

The NWA, which class plaintiffs have attached to their fifth amended complaint, provides, in pertinent part:

> The CVS Class Defendants and the E-Ferol Class hereby waive any and all claims, causes of action, rights, damages or demands of whatsoever nature or kind for bad faith or extra-contractual liability damages against Federal arising from Federal's acts or omissions in connection with E-Ferol claims, including but not limited to the claim tendered by CVS Revco D.S., Inc. or Retrac for coverage under the Federal Policy for claims asserted against them in the Class Action as of the date of this Agreement, save and except the E-Ferol Class may seek attorney's fees and costs, in addition to any funds disbursed from the Escrow Payment, for prevailing in the Consolidated Declaratory Judgment Actions.

5th Am. Compl. Ex. 2 at 15.  Under the clear and unambiguous language of the NWA, the class plaintiffs waived any bad faith claim that they may have been able to assert against Federal based on its actions in connection with the E-Ferol class action.[7]  The class plaintiffs maintain that, even though they have waived any and all bad faith and extra-contractual claims *for damages*, they can recover attorney's fees, costs, and interest based on Federal's alleged violations of the Texas Insurance Code and for bad faith under Texas and Ohio common law.  The court disagrees.

The Texas Unfair Claim Settlement Practices Act prohibits insurers from, *inter alia*, failing to attempt in good faith to effect a prompt, fair, and equitable settlement of a claim, in which liability has become reasonably clear.  *See* Tex. Ins. Code Ann. § 541.060 (West 2009).  It provides for the payment of attorney's fees to "[a] plaintiff *who prevails in an action under this subchapter*."  Tex. Ins. Code Ann. § 541.152 (West 2009) (emphasis

---

[7]The class plaintiffs acknowledge such a waiver, stating that, "pursuant to the NWA, [they] are not seeking damage awards based upon [theories of bad faith under Texas law and under Ohio law]."  Ps. Br. 3.

added).  The court holds that the class plaintiffs cannot establish the predicate for recovering

attorney's fees under § 541.152—i.e., "prevail[ing] in an action under this

subchapter"—because they have undisputedly waived their right to bring an action under

Tex. Ins. Code Ann. § 541.151 (West 2009) (authorizing private action for damages caused

by the conduct prohibited by § 541.060).  Similarly, by waiving their right to bring an action

under the Texas Prompt Payment of Claims Act,[8] the class plaintiffs relinquished any right

to recover statutory interest and attorney's fees under Tex. Ins. Code Ann. § 542.060.  The

class plaintiffs fare no better under Ohio law, which permits "[a]ttorney fees [to] be awarded

[in a bad faith action] as an element of compensatory damages where the jury finds that

punitive damages are warranted."  *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 402 (Ohio

1994).  Because the class plaintiffs waived "all claims, causes of action, rights, damages or

demands of whatsoever nature or kind for bad faith or extra-contractual liability damages"

under the NWA, they cannot recover attorney's fees "as an element of compensatory

damages" for Federal's bad faith (if any).

---

[8]The Texas Prompt Payment of Claims Act prohibits certain delays in the payment of
insurance claims, Tex. Ins. Code Ann. § 542.058(a) (West 2009), and provides:

> If an insurer that is liable for a claim under an insurance policy
> is not in compliance with this subchapter, the insurer is liable to
> pay the holder of the policy or the beneficiary making the claim
> under the policy, in addition to the amount of the claim, interest
> on the amount of the claim at the rate of 18 percent a year as
> damages, together with reasonable attorney's fees.

Tex. Ins. Code Ann. § 542.060(a) (West 2009).

Accordingly, because the class plaintiffs waived all the predicates for recovering attorney's fees under the Texas Insurance Code and Ohio common law, the court grants Federal's motion and dismisses the class plaintiffs' bad faith claims, including the class plaintiffs' claims for attorney's fees, costs, and interest under the Texas Insurance Code and Ohio common law.[9]

IV

The court turns next to the class plaintiffs' motion to dismiss Federal's defenses and counterclaims. In § IV the court addresses Federal's defenses and affirmative defenses, and in § V it addresses Federal's counterclaims.

A

Although entitled as a motion to dismiss, the class plaintiffs move to strike, or, alternatively, to dismiss Federal's second through thirteenth defenses. They contend that Federal, as the insurer, has the burden of proving any avoidance, exclusion, or affirmative defense; that these affirmative defenses are pleaded as conclusory statements unsupported by any factual allegations; and that these affirmative defenses are deficient under Rules 8 and

---

[9]The class plaintiffs argue that "[t]he requirement that class plaintiffs be able to seek attorney's fees and costs, in addition to the policy limits of the Federal excess liability policy in escrow, was the result of considerable discussion and bargaining between the parties prior to the parties agreeing to the [NWA]." Ps. Br. 6. In dismissing class plaintiffs' claims for attorney's fees under the Texas Insurance Code and under Ohio common law, the court expresses no opinion as to whether class plaintiffs will be able to recover attorney's fees under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, if they are successful on their claims for declaratory relief.

9[10] and the pleading standard set forth in *Iqbal* and *Twombly*.  The class plaintiffs move the court to strike these defenses under Rule 12(f), or, alternatively, to dismiss them under Rule 12(b)(6).

Federal responds that the pleading standards of *Iqbal* and *Twombly* do not apply to affirmative defenses and that it has satisfied the applicable "fair notice" pleading standard. Federal contends that the class plaintiffs' motion to strike should also be denied because they have not demonstrated that these affirmative defenses are legally or factually unsustainable or that including them in Federal's answer is prejudicial.

The class plaintiffs reply that, even under a "fair notice" standard, the affirmative defenses do not provide fair notice.  They maintain that the second, third, fifth, and sixth defenses are so vague and indefinite as to be incomprehensible; the fifth and sixth defenses encompass the entire Federal Policy and thus provide no notice of a defense; the seventh and ninth affirmative defenses are duplicative of Federal's counterclaims; and defenses four, eight, eleven, and twelve state no factual basis and appear to be contrary to the NWA.

B

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Rule 12(f).  In striking a defense as

---

[10]Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake."  Although the class plaintiffs contend that Federal's affirmative defenses do not comply with the pleading requirements of Rule 9, they do not contend that any defense alleges fraud or mistake and therefore that Federal was required to plead it with particularity.  Accordingly, to the extent the class plaintiffs move to dismiss any of Federal's affirmative defenses based on Rule 9, the court denies the motion.

insufficient, the defense must be insufficient as a matter of law. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) ("Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law.").

The parties dispute whether the pleading standards set forth in *Twombly* and *Iqbal* apply to affirmative defenses. This court has held that they do not. *See Mary Kay, Inc. v. Dunlap*, 2012 WL 2358082, at *8 (N.D. Tex. June 21, 2012) (Fitzwater, C.J.); *SEC v. Cuban*, 798 F.Supp.2d 783, 795 n.13 (N.D. Tex. 2011) (Fitzwater, C.J.); *EEOC v. Courtesy Bldg. Servs., Inc.*, 2011 WL 208408, at *2 (N.D. Tex. Jan. 21, 2011) (Fitzwater, C.J.). Instead, the court applies the "fair notice" pleading standard for affirmative defenses set forth in *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). *See Cuban*, 798 F.Supp.2d at 795 n.13. Accordingly, to adequately plead an affirmative defense, there must be enough factual particularity to give the plaintiff "fair notice of the nature of the affirmative defense and prevent unfair surprise." *Mary Kay*, 2012 WL 2358082, at *8 (quoting *Cuban*, 798 F.Supp.2d at 795 n.13) (internal quotation marks omitted). "Although . . . in some instances merely pleading the name of the affirmative defense may be sufficient, a 'fact-specific inquiry' is required to determine whether the pleadings set forth the 'minimum particulars' needed to ensure the plaintiff is not the victim of unfair surprise." *Id.* (quoting *Woodfield*, 193 F.3d at 362).

C

The class plaintiffs move to strike ten[11] of Federal's defenses and affirmative defenses[12] on the basis of insufficient pleading.

1

The class plaintiffs move to strike Federal's second defense, in which it alleges that the class plaintiffs have failed to state a claim on which relief can be granted. They maintain that this defense is so vague and indefinite as to be incomprehensible.

The court concludes that, as pleaded, this defense does not comply with *Woodfield* in that it does not state the basis for the defense. This court has held that "[t]he defense of 'failure to state a claim' is so broad that it is unclear merely from an assertion of the name of the defense what the nature of the defense may be." *Courtesy Bldg. Servs.*, 2011 WL 208408, at *3 (citing *Lebouef v. Island Operating Co.*, 342 Fed. Appx. 983, 985 (5th Cir. 2009)). The court therefore grants the class plaintiffs' motion to strike this defense.

2

The class plaintiffs maintain that Federal's third defense is vague and indefinite and fails to provide them with fair notice. This defense asserts:

---

[11]Although the class plaintiffs move to dismiss the second through the thirteenth defenses, they only provide a basis for dismissing the second, third, fourth, fifth, sixth, seventh, eighth, ninth, eleventh, and twelfth defenses.

[12]Some defenses are pleaded so vaguely that the court cannot determine whether they ought to be classified as defenses or affirmative defenses.

> Plaintiffs' claims are or may be barred in whole or in part by the
> doctrines of judicial estoppel, based on their prior statements
> and/or omissions in this litigation regarding Retrac's intent or
> expectation of harm as well as the doctrine of waiver based on
> Class Plaintiffs' waiver of all claims other than those retained
> pursuant to the terms of the [NWA].

Am. Ans. to 5th Am. Compl. ¶ 73.  The court holds that this defense provides the class

plaintiffs fair notice of the basis for this defense: judicial estoppel, based on prior statements

regarding Retrac's intent or expectation of harm, and waiver, based on the terms of the

NWA.  The court denies this ground of the class plaintiffs' motion in this respect.

3

The class plaintiffs next challenge Federal's fifth and sixth defenses.  Federal alleges

as the fifth defense that "Plaintiffs' claims are or may be barred in whole or in part under the

terms, conditions, limits, exclusions or endorsements of the Policy or the Transit Policy."

*Id.* at ¶ 75.  Federal pleads as its sixth defense: "Plaintiffs' claims are or may be barred to the

extent Plaintiffs and/or CVS/Revco have not fulfilled all conditions precedent and

subsequent for coverage under the Policy or the Transit Policy."  *Id.* at ¶ 76.  The class

plaintiffs posit that such broad pleading encompasses the entire policy, which consists of

terms, conditions, limits, exclusions, or endorsements, most of which can be considered

conditions precedent or subsequent.  The court agrees.  As pleaded, this defense is a

broadly-worded averment that covers a multitude of potential defenses based on the

underlying insurance policies.  Additionally, Rule 9(c) provides, in pertinent part: "[b]ut

when denying that a condition precedent has occurred or been performed, a party must do

so with particularity."  Federal's sixth defense does not comply with the particularity requirement of Rule 9(c).

Accordingly, the court grants the class plaintiffs' motion to strike Federal's fifth and sixth defenses.

4

The class plaintiffs contend that Federal's seventh and ninth defenses are duplicative of counts I and III[13] of its counterclaim and do not provide fair notice.  Federal alleges as its seventh defense that "Plaintiffs' claims are or may be barred to the extent that CVS/Revco has not provided timely notice [to] Federal."  Am. Ans. to 5th Am. Compl. ¶ 77.  It asserts as its ninth defense that, "[t]o the extent that the matter[s] giving rise to the claims being asserted were either expected or intended by Plaintiffs' assignors, such claims are excluded from coverage under the Federal Policy."  *Id.* at ¶ 79.

Although the court agrees that there is a high degree of congruence between Federal's seventh and ninth defenses and counts I and II of Federal's declaratory judgment counterclaim, this overlap does not provide a basis for striking these defenses because, as the court discusses below, it is dismissing all counts of Federal's declaratory judgment counterclaim.  Additionally, these defenses provide the class plaintiffs fair notice.  The class plaintiffs clearly anticipate that Federal will defend against their declaratory judgment action by arguing that it did not receive timely notice and that it has no obligation to indemnify the

---

[13]The class plaintiffs refer in their reply brief to counts II and III.  The court assumes that they intend to argue that these defenses are duplicative of counts I and III.

- 15 -

class plaintiffs because the acts of Federal's insured were intentional.  The class plaintiffs have in fact anticipated these contentions in the fifth amended complaint.  *See* 5th Am. Compl. ¶¶ 58-91.  Accordingly, the court denies the class plaintiffs' motion to strike Federal's seventh and ninth defenses.

5

The class plaintiffs move for relief as to Federal's fourth, eighth, eleventh, and twelfth defenses on the ground that they do not provide fair notice.[14]

Federal's fourth defense alleges that "Plaintiffs' claims are barred to the extent Plaintiffs[] are unable to establish the existence of coverage under the Policy."  Am. Ans. to 5th Am. Compl. ¶ 74.  As pleaded, this defense merely disclaims liability if the class plaintiffs are unable to establish coverage under the Policy.  It is too broad to give the class plaintiffs fair notice of any specific defense.  *Cf. Lebouef*, 342 Fed. Appx. at 985 ("[G]iven

---

[14]The class plaintiffs argue that the fourth, eighth, eleventh, and twelfth defenses appear to be contrary to the NWA, under which Federal placed its policy limit in escrow and agreed to limit coverage issues in this proceeding.  They contend that, pursuant to the NWA, they are not required to establish liability or damages in an adversarial trial or to obtain or pay a judgment, and that Federal waived and agreed not to dispute that the E-Ferol class has standing to assume the putative contractual claims for coverage for indemnity.  The class plaintiffs posit that, because these defenses violate the NWA, they not only should be stricken but that Federal should be precluded from repleading them.

Because the class plaintiffs raise this argument for the first time in their reply brief, and Federal has not had an opportunity to respond, the court will not consider this additional basis for striking Federal's defenses.  *See, e.g., Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F.Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.)) ("[T]he court will not consider an argument raised for the first time in a reply brief."), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

that there are nineteen affirmative defenses listed in rule 8(c), as well as other deficiencies that can cause failure to state a claim, the defendant must provide at least some information that alerts the plaintiff to what the alleged problem is [at the pleadings stage]."). The court strikes this defense.

Similarly, Federal's eleventh defense, which alleges that "Plaintiffs' claims are or may be barred in whole or in part to the extent Plaintiffs have impaired the contribution, subrogation or indemnification rights of Federal," Am. Ans. to 5th Am. Compl. ¶ 81, does not fairly notify the class plaintiffs of the basis for the defense. The court also strikes this defense.

Federal's eighth defense—which asserts that "[a]ny recovery against Federal must be reduced to the extent Plaintiffs have failed to mitigate, minimize, or avoid their claimed damages," *id.* at ¶ 78—is sufficient to plead the affirmative defense of failure to mitigate damages. *See, e.g., Carpenter v. Ford Motor Co.*, 761 F. Supp. 62, 65 (N.D. Ill. 1991) (holding that defense asserting "[t]hat with respect to plaintiff's claim for monetary relief under Title VII, defendants are entitled to a set-off from any potential liability in the amount equal to the sums earned by the plaintiff since her termination or which plaintiff could have earned had she exercised reasonable diligence to mitigate her damages" was sufficient under notice pleading standard to "sufficiently apprise[] the plaintiff of [defendants'] intent to argue that the plaintiff failed to mitigate her damages."). The court declines to strike this defense.

Federal's twelfth defense—which states that "Plaintiffs have the burden to allocate between allegedly covered claims and claims for which no coverage is afforded," Am. Ans.

to 5th Am. Compl. ¶ 82, merely states a legal proposition.  As phrased, it does not even assert that the class plaintiffs cannot meet this burden.  The court therefore strikes this defense on the ground that it does not fairly notify the class plaintiffs of the basis for the defense.

6

Although the class plaintiffs move to strike Federal's second through thirteenth affirmative defenses, they do not provide any basis for striking the tenth and thirteenth defenses.  Accordingly, the court denies the class plaintiffs' motion as to these defenses.  In doing so, however, the court notes that it is doubtful that the thirteenth defense—which reads, "Federal reserves its right to amend this answer to assert additional affirmative and other defenses that may become necessary once discovery begins in this matter," *id.* at ¶ 83—even pleads a defense.

V

The class plaintiffs also move to dismiss the five counts of Federal's counterclaim.

A

Federal was the plaintiff in the Ohio Action, seeking a declaratory judgment that it had no duty to indemnify CVS.[15]  After the Ohio Action was transferred to this court and consolidated with this class action, Federal was realigned as a defendant.  As a defendant, Federal is required under Rule 13 to plead any compulsory counterclaims it has against the

---

[15]In the Ohio Action, Federal alleged that it had no duty to indemnify CVS for the underlying claims because personal injury or death was expected or intended from the standpoint of Carter.

class plaintiffs, and it is permitted to plead any counterclaim that is not compulsory.  Under

Rule 13(c), "[a] counterclaim need not diminish or defeat the recovery sought by the

opposing party [, and] [i]t may request relief that exceeds in amount or differs in kind from

the relief sought by the opposing party."

>   In the fifth amended complaint, the class plaintiffs seek a declaratory judgment that

> the excess liability insurance policies issued by Federal and
> International, which "follow form" of the liability insurance
> policy issued by Transit cover the liability and damages
> allegation by the E-Ferol class in the underlying litigation and
> thus, said entities are to indemnify the class plaintiffs as
> assignees of the Revco defendants to the full extent of the $110
> million settlement as set out in the Settlement Agreement . . .
> between the Revco defendants and the plaintiff class.

5th Am. Compl. at 33-34.  Federal's counterclaim consists of the following five counts: (I)

it has no duty to indemnify plaintiffs under the Transit Policy because personal injury or

death was expected or intended from the standpoint of the insureds; (II) it has no duty to pay

medical monitoring costs because the Transit Policy does not provide coverage for medical

monitoring costs; (III) CVS and Retrac failed to provide prompt notice of the underlying

claims and thus breached a condition precedent to coverage under the Federal Policy; (IV)

the Transit Policy's exclusion for personal injury arising from the failure of CVS and

Retrac's products to meet the level of performance, quality, or fitness represented or

warranted excludes coverage for the underlying claims; and (V) the class plaintiffs do not

have the right to make a claim for coverage under the Federal Policy, as assignees of

CVS/Retrac, because when Carter sold its assets and working capital in 1986, it transferred

and no longer has a right to assert coverage under the Federal Policy.

B

The court declines in its discretion to hear the five counts of Federal's declaratory

judgment counterclaim.

> The federal Declaratory Judgment Act [("DJA")] does not create a substantive cause of action. A declaratory judgment action is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law. Federal courts have broad discretion to grant or refuse declaratory judgment. Since its inception, the DJA has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. The DJA is an authorization, not a command. It gives federal courts the competence to declare rights, but it does not impose a duty to do so.

*Evanston Ins. Co. v. Graves*, 2013 WL 4505181, at *1 n.3 (N.D. Tex. Aug. 23, 2013)

(Fitzwater, C.J.) (quoting *Schrader-Scalf v. CitiMortgage, Inc.*, 2013 WL 625745, at *3

(N.D. Tex. Feb. 20, 2013) (Fitzwater, C.J.) (bracketed material added)). The counts of

Federal's counterclaim present defenses or affirmative defenses[16] to the class plaintiffs'

---

[16]Under both Texas and Ohio law, the insured has the burden of proving coverage under a policy of insurance. *See Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001) ("The insured bears the initial burden of showing that the claim against her is potentially within the insurance policy's scope of coverage." (citations omitted) (Texas law)); *Chi. Title Ins. Co. v. Huntington Nat'l Bank*, 719 N.E.2d 955, 959 (Ohio 1999) ("One who seeks to recover on an insurance policy generally has the burden of demonstrating coverage under the policy and then proving a loss." (citation omitted)). But when an insurer denies liability coverage based on a policy exclusion, the insurer must plead the policy exclusion as an affirmative defense and must demonstrate the applicability of the exclusion. Tex. Ins. Code Ann. § 554.002 (West 2009) ("Language of exclusion in the contract or an exception to coverage claimed by the insurer . . . constitutes an avoidance or an affirmative defense."); *Cont'l Ins. Co. v. Louis Marx Co.*, 415 N.E.2d 315, 317 (Ohio 1980) ("[A]

- 20 -

declaratory judgment claim. They do not seek any relief other than a judgment that Federal is not liable on the class plaintiffs' declaratory judgment claim for indemnity. In other words, the counts of Federal's counterclaim are essentially grounds for asserting the mirror image of the class plaintiffs' declaratory judgment action: they are predicates for seeking a declaration that Federal does *not* have a duty to indemnify the class plaintiffs under the Federal Policy. In *Evanston Insurance*, for example, the court raised *sua sponte* that a counterclaim seeking a declaration that an insurance company had incorrectly denied coverage was the mirror image of the plaintiff's declaratory judgment action, and it declined in its discretion to hear the counterclaim. *Evanston Ins.*, 2013 WL 4505181, at *1.[17]

Accordingly, the court in its discretion dismisses the five counts of Federal's counterclaim without prejudice.[18]

---

defense based on an exception or exclusion in an insurance policy is an affirmative one, and the burden is cast on the insurer to establish it."). To the extent Federal has pleaded policy exclusions as counterclaims, this is improper; policy exclusions must instead be pleaded as affirmative defenses.

[17]Although the court is raising this ground for dismissal *sua sponte*, it is also allowing Federal to replead, so the procedure employed here is fair and is therefore permissible. *See, e.g., Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 733-34 n.7 (N.D. Tex. 2011) (Fitzwater, C.J.) (noting that district court has authority to consider sufficiency of complaint and dismiss action on its own motion as long as procedure employed is fair, raising ground for dismissal *sua sponte*, and concluding that procedure was fair because court was granting leave to replead).

[18]Because the court is granting the class plaintiffs' motion to dismiss the five counts of Federal's counterclaim, it denies as moot their motion for a more definite statement under Rule 12(e).

VI

The class plaintiffs move for judgment on the pleadings under Rule 12(c) as to Federal's affirmative defenses and counterclaims.

Rule 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Because the court is granting Federal leave to amend its answer, including its counterclaims, the court concludes that the pleadings have not closed and that the class plaintiffs' Rule 12(c) motion is premature. Accordingly, the motion is denied.

VII

Federal requests leave to replead. The court grants the request. Additionally, because the court is dismissing the counts of Federal's counterclaim *sua sponte*, it grants Federal leave to replead for this reason as well. Accordingly, the court grants Federal 28 days from the date this memorandum opinion and order is filed to file a second amended answer to plaintiffs' fifth amended complaint.

\* \* \*

For the reasons explained, the court grants Federal's motion; grants in part and denies in part the class plaintiffs' motion to dismiss Federal's defenses and counterclaims; and denies the class plaintiffs' motion for judgment on the pleadings. The court grants Federal

leave to file a second amended answer to plaintiffs' fifth amended complaint.

**SO ORDERED.**

September 11, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE