IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| VICTORIA KLEIN, et al., § | |
| § | |
| Plaintiffs, § | |
| § Civil Action No. 7:03-CV-102-D | |
| VS. § (Consolidated with | |
| § Civil Action No. 7:09-CV-094-D) | |
| FEDERAL INSURANCE CO., § | |
| a/k/a CHUBB GROUP OF § | |
| INSURANCE COMPANIES, et al., § | |
| § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

In this insurance coverage dispute between the plaintiffs in a certified class action involving the administration of the vitamin E supplement E-Ferol Aqueous Solution ("E-Ferol") and defendant Federal Insurance Co. ("Federal"), an excess liability carrier, the class plaintiffs seek a declaration that Federal owes post-judgment interest on the judgment rendered against it in *Klein v. Federal Insurance Co.*, 220 F.Supp.3d 747 (N.D. Tex. 2016) (Fitzwater, J.) ("*Klein VII*"), and affirmed by the Fifth Circuit on March 12, 2018, *Klein v. Federal Insurance Co.*, 714 Fed. Appx. 441 (5th Cir. 2018) (per curiam). For the reasons that follow, the court grants the class plaintiffs' motion and orders Federal to pay the class plaintiffs post-judgment interest in the sum of $157,217.50.

I

This case is the subject of several prior memorandum opinions and orders.[1]  The court will therefore recount only the background facts and procedural history that are pertinent to this decision.

The class plaintiffs are members of a certified class of persons, or the legal representatives of persons, who, during the period from November 1, 1983 until April 30, 1984, were administered E-Ferol and died or were injured as a result ("the class plaintiffs" or the "E-Ferol Class").  *Klein v. Fed. Ins. Co.*, 2014 WL 239652, at *1 (N.D. Tex. Jan. 22, 2014) (Fitzwater, C.J.) ("*Klein V*").  In 2003 the class plaintiffs sued, among others, Revco D.S., Inc. ("Revco")[2] and Revco's wholly owned subsidiary, Carter-Glogau Laboratories, Inc. ("Carter-Glogau"),[3] alleging claims for negligence, strict liability, and negligent misrepresentation.  *Id*.  During the relevant period, Revco was insured by an excess liability policy ("Federal Policy") issued by Federal.

---

[1]*See, e.g., Klein VII*, 220 F.Supp.3d 747; *Klein v. Fed. Ins. Co.*, 2014 WL 4476556 (N.D. Tex. Sept. 11, 2014) (Fitzwater, C.J.); *Klein v. Fed. Ins. Co.*, 2014 WL 239652 (N.D. Tex. Jan. 22, 2014) (Fitzwater, C.J.); *Klein v. Fed. Ins. Co.*, 2012 WL 2886679 (N.D. Tex. July 16, 2012) (Fitzwater, C.J.); *Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632 (N.D. Tex. 2010) (Fitzwater, C.J.); *Klein v. O'Neal, Inc.*, 2009 WL 3573849 (N.D. Tex. Oct. 30, 2009) (Fitzwater, C.J.); *Klein v. O'Neal, Inc.*, 222 F.R.D. 564 (N.D. Tex. 2004) (Buchmeyer, J.).

[2]In 1997 Revco merged with CVS Corporation and the new corporation was named CVS Revco D.S., Inc.  *Klein VII*, 220 F.Supp.3d at 751 n.3.  After a subsequent merger, the corporation's name changed to CVS Caremark Corporation.

[3]In December 1986 certain assets of Carter-Glogau were sold, including the use of the name "Carter-Glogau Laboratories, Inc."  The liabilities, including the liability for E-Ferol claims, remained with the corporate entity, which was then renamed Retrac, Inc. ("Retrac").

On October 7, 2009 the class plaintiffs entered into a Settlement Agreement and Release ("Settlement Agreement") with Retrac, Inc. ("Retrac"), among others, resolving the claims between the parties concerning the manufacture and distribution of E-Ferol. The settlement was funded by liability insurance from the class action defendants' excess coverage insurance carriers. Federal, however, did not participate in funding the class settlement, and it disputed that it had a duty under the Federal Policy to indemnify its insureds (Carter-Glogau and Revco) for the class plaintiffs' claims. Retrac and Revco therefore agreed under the Settlement Agreement to assign to the E-Ferol Class their rights to seek indemnity coverage from Federal for the claims asserted against them in the Consolidated Declaratory Judgment Actions. Under the terms of a "Non-Waiver Agreement" ("NWA"), executed concurrently with the Settlement Agreement, Federal agreed to deposit the $15 million limits of the Federal Policy into an interest bearing escrow account to be disbursed either to Federal or to the E-Ferol Class after a final judgment in the Consolidated Declaratory Judgment Actions and after the exhaustion of all appeals.

After the court approved the class settlement and Revco and Retrac assigned to the class plaintiffs their right to seek indemnity coverage against Federal and the other non-settling insurers, the class plaintiffs amended their complaint to seek a judgment declaring that the Federal Policy covered the liability and damages allegations by the class plaintiffs, and that Federal, among others, must indemnify the class plaintiffs, as assignees of Carter-Glogau (now Retrac) and Revco, to the full extent of the $110 million settlement, as set out in the Settlement Agreement.

In *Klein VII* the court granted summary judgment in favor of the class plaintiffs on the question of coverage, holding, *inter alia*, that the Federal Policy provided coverage based on Revco's negligent supervision of its subsidiary, Carter-Glogau (now Retrac), in the manufacturing and marketing of E-Ferol; that the Settlement Agreement did not release the claims against Revco from the class action; and that the class plaintiffs were entitled to summary judgment on all of Federal's affirmative defenses. *Klein VII*, 220 F.Supp.3d at 753, 759, 765. On December 2, 2016 the court entered a Rule 54(b) final judgment ("Judgment") in favor of the class plaintiffs, awarding "the sum of $15,000,000.00 deposited into an interest bearing escrow account by [Federal] under the terms of the [NWA], plus all accrued interest." Judgment at 1. On March 12, 2018 the Fifth Circuit affirmed the Judgment "essentially for the reasons given in [the district court's] thorough Memorandum Opinion and Order." *Klein v. Fed. Ins. Co.*, 714 Fed. Appx. 441 (5th Cir. 2018) (per curiam).

On March 29, 2018 the escrow agent transferred the funds in escrow to the class plaintiffs' trust account, together with interest that had accrued in the escrow account, in the total sum of $15,047,658.95.[4] Although Federal is willing for the class plaintiffs to have the interest that accrued in the escrow account, it has refused to pay post-judgment interest on the Judgment under 28 U.S.C. § 1961(a) and Fed. R. App. P. 37. Accordingly, the class plaintiffs move for judgment declaring that, under 28 U.S.C. § 1961 and Fed. R. App. P. 37,

---

[4]Federal also agreed to pay the court costs due on the Judgment in both the district and appellate courts.

Federal owes the sum of $157,217.50[5] in post-judgment interest on the Judgment. Federal opposes the motion.

II

The court first addresses Federal's contention that it does not owe post-judgment interest under 28 U.S.C. § 1961(a) because the parties contracted for a different rate of interest in the NWA.

A

"The post-judgment interest rate for judgments in federal courts is governed by federal statute, 28 U.S.C. § 1961(a)." *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 594 (5th Cir. 2006). "Postjudgment interest is not discretionary but 'shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield[.]'" *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456-57 (5th Cir. 2013) (footnote omitted) (quoting 28 U.S.C. § 1961(a)). Under Fed. R. App. P. 37, "if a money judgment in a civil case is affirmed, whatever interest is allowed by law is payable from the date when the district court's judgment was entered."

Despite the mandatory language of § 1961(a), "it is well-settled that parties may contract for a different rate 'consistent with state usury and other applicable laws.'" *Tricon Energy Ltd.*, 718 F.3d at 457 (quoting *Hymel v. UNC, Inc.*, 994 F.2d 260, 266 (5th Cir.

---

[5]Although Federal disputes that it owes post-judgment interest on the Judgment, it does not appear to dispute that $157,217.50 is the correct amount of post-judgment interest that would be due if calculated under 28 U.S.C. § 1961 and Fed. R. App. P. 37.

1993)). "But to do so, they must specifically contract around the general rule that a cause of action reduced to judgment merges into the judgment and the contractual interest rate therefore disappears for post-judgment purposes." *Id.* (quoting *In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009)). In other words, "[p]arties wishing to contract around the statutory rate must do so using 'clear, unambiguous[,] and unequivocal language,' otherwise, the contract merely merges into the judgment." *Id.* at 458-59 (alteration in original) (quoting *Riebesell*, 586 F.3d at 794).

B

To determine whether the class plaintiffs and Federal clearly, unambiguously, and unequivocally contracted around the statutory rate of post-judgment interest, the court must examine the language in the NWA. Under Texas law,[6] the court's primary concern when interpreting a contract is to ascertain the parties' intentions as expressed objectively in the contract. *Bank One, Tex., N.A. v. FDIC*, 16 F.Supp.2d 698, 707 (N.D. Tex. 1998) (Fitzwater, J.) (citation omitted).

> In doing so, the court must examine and consider the entire writing in an effort to harmonize and give effect to all contractual provisions, so that none will be rendered meaningless. Language should be given its plain and grammatical meaning unless it definitely appears that the parties' intention would thereby be defeated. Where the contract can be given a definite legal meaning or interpretation, it is not ambiguous, and the court will construe it as a matter of

---

[6]The NWA states, in pertinent part, that "[t]he validity, effect and construction of this Agreement shall be determined in accordance with the laws of the State of Texas without regard to choice of law principles." P. App. Ex. 1 at 9, ¶ 17.

> law. A contractual provision is ambiguous when its meaning is uncertain and doubtful or if it is reasonably susceptible to more than one interpretation. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole, in light of the circumstances present when the contract was entered.

*Orthoflex, Inc. v. ThermoTek, Inc.*, 2013 WL 4045206, at *3 (N.D. Tex. Aug. 9, 2013) (Fitzwater, C.J.) (citing *Bank One, Tex.*, 16 F.Supp.2d at 707), *aff'd sub nom. Motion Med. Techs., L.L.C. v. ThermoTek, Inc.*, 875 F.3d 765 (5th Cir. 2017).

C

Federal maintains that the NWA expressly and explicitly provides the rate of interest that will accrue before and after judgment by defining "interest" to mean "the prevailing rate of interest earned on funds deposited into escrow accounts maintained by the chosen bank" and not "the legal rate of interest," and by stating that the rate of interest set forth in the NWA would apply up until the time the funds were to be disbursed, which would be after any appeal of a judgment. D. Br. 7. The court disagrees with this reading of the NWA.

The NWA provides in ¶ 1, in pertinent part, that, upon approval of the Settlement Agreement and NWA,

> Federal shall deposit the $15 million limits of liability of the Federal Policy into an interest bearing escrow account maintained by an escrow agent that shall be a financially solvent FDIC insured bank chosen by Federal (the "Escrow Payment"). As used herein, "interest" shall mean the prevailing rate of interest earned on funds deposited into escrow accounts maintained by the chosen bank and shall not mean the legal rate of interest.

P. App. Ex. 1 at 5, ¶ 1. Although the NWA specifically provides for interest on the Escrow

Payment to be earned at "the prevailing rate of interest" as opposed to "the legal rate of interest," it does so when prescribing the characteristics or requirements of the escrow account into which Federal is to deposit the $15 million.  In other words, the parties clearly agree in the NWA that Federal must deposit the $15 million Escrow Payment into an interest bearing escrow account that earns interest at the prevailing rate of interest earned on funds deposited into escrow accounts maintained by the chosen bank rather than at the legal rate of interest.  The NWA, however, does not address post-judgment interest *per se*.  Nor does it clearly waive the class plaintiffs' entitlement to post-judgment interest under 28 U.S.C. § 1961(a) and Fed. R. App. P. 37 or set an interest rate for post-judgment interest that is different from the federal rate.

> Regarding the disbursement of the funds held in escrow, the NWA provides:
>
>> [t]he escrow agent shall be instructed to disburse all or a portion of the funds on deposit in escrow, plus all accrued interest thereon, in accordance with the decision of the U.S. District Court, for the Northern District of Texas, in the Consolidated Declaratory Judgment Actions only when judgment becomes final and after exhaustion of all appeals as follows: . . .  In the event the U.S. District Court for the Northern District of Texas finds coverage for all the E-ferol claims under the Federal Policy, and that finding is upheld on appeal, if any appeal is taken, then all funds on deposit in the escrow account shall be disbursed to Federal, plus all interest accrued thereon.

P. App. Ex. 1 at 6, ¶ 5.  This provision directs the escrow agent to disburse the $15 million plus any interest that has accrued "when judgment becomes final and after exhaustion of all appeals."  *Id.*  The reference to "when judgment becomes final and after exhaustion of all appeals" merely provides the *time* at which the funds held in escrow are to be disbursed.  It

does not, as Federal argues, purport to waive the prevailing party's entitlement to post-judgment interest or designate a post-judgment interest rate other than the rate provided in 28 U.S.C. § 1961(a).

Courts have found a clear, unambiguous, and unequivocal agreement to use a different rate of interest from the mandatory rate under § 1961(a) when the parties expressly refer to post-judgment interest. For example, in *Hymel*, the panel noted that the district court was correct in awarding post-judgment interest at the rate of 9% per annum where the note provided that "[a]ll past due interest and/or principal shall bear interest from maturity until paid, *both before and after judgment*, at the rate of 9% per annum." *Hymel*, 994 F.2d at 265-66; *see also Campbell Harrison & Dagley v. Hill*, 2017 WL 5649604, at *2 (N.D. Tex. Jan. 27, 2017) (Lindsay, J.) (unpublished order) (holding that the parties "clearly and unmistakably expressed the intention that the contractual post-maturity rate continue in effect postjudgment" when they agreed that "[o]verdue principal and interest shall bear interest, *before and after judgment*, for each day that such amounts are overdue at the lesser of [two designated rates].").  But there is no express reference to post-judgment interest in the NWA, and the NWA does not otherwise clearly, expressly, and unambiguously state that the prevailing party agrees to waive the party's statutory right to recover post-judgment interest or that the rate of post-judgment interest will differ from the federal rate.

### III

Federal next contends that it is not required to pay post-judgment interest on the Judgment because it is not a "money judgment," as 28 U.S.C. § 1961(a) and Fed. R. App. P.

37(a) require.[7] The court disagrees.

A "money judgment" is a "judgment for damages subject to immediate execution, as distinguished from equitable or injunctive relief." Black's Law Dictionary 920 (9th ed. 2009). The Judgment in this case provides, in pertinent part:

> [f]or the reasons set out in a memorandum opinion and order filed today, it is ordered and adjudged that the plaintiffs in these consolidated declaratory judgment actions ("the class plaintiffs") have and recover the sum of $15,000,000.00 deposited into an interest bearing escrow account by defendant Federal Insurance Co. ("Federal") under the terms of the Non-Waiver Agreement, plus all accrued interest.

Judgment at 1. This is not an award of equitable or injunctive relief. And although the parties contractually agreed, through the NWA, that the $15 million plus accrued interest would not be disbursed until all appeals were exhausted, the Judgment itself makes no reference to any appeal and does not otherwise suggest that payment of the funds held in escrow is contingent on any future event. It simply orders Federal to pay the class plaintiffs a specific sum of money.

Federal argues in response that, because the Judgment ordered Federal to comply with the terms of the NWA, and because the NWA did not require disbursement of the funds held in escrow until a future date (i.e., when all appeals are exhausted ), the Judgment is not a "money judgment," but is, instead, an order to pay Federal in the future. Federal's argument

---

[7]*See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); Fed. R. App. P. 37 ("Unless the law provides otherwise, if a money judgment in a civil case is affirmed, whatever interest is allowed by law is payable from the date when the district court's judgment was entered.").

is flawed for at least the following reasons.

First, the Judgment does not, as Federal argues, order Federal to comply with the NWA. Instead, it orders Federal to pay the class plaintiffs a certain sum of money, stating, in unambiguous terms, that the class plaintiffs are to "have and recover the sum of $15,000,000.00 deposited into an interest bearing account" plus all accrued interest. The reference to the NWA is in the *same clause* that identifies the money to which class plaintiffs are entitled, i.e., the $15 million that Federal deposited into an interest bearing escrow account under the terms of NWA. In other words, the court is not stating that Federal must pay the Judgment "under the terms of the NWA"; it is stating that Federal must pay the Judgment and that the place from which Federal is to obtain this sum is from the escrow account into which it deposited the $15 million pursuant to the NWA.

Second, Federal cites no authority for the proposition that the ability to defer payment until after all appeals are exhausted can somehow turn a money judgment into a non-money judgment for purposes of post-judgment interest. Were this the case, Fed. R. App. P. 37 (which authorizes post-judgment interest on a money judgment from the date the district court's judgment is entered), would be rendered meaningless any time the parties to a lawsuit postponed payment of a judgment until after all appeals were exhausted.

For these reasons, the court holds that because the Judgment is, in substance, a final order to pay money, it is a "money judgment" as that term is used in 28 U.S.C. § 1961(a) and Fed. R. App. 37.

* * *

Accordingly, for the reasons explained, the court grants the class plaintiffs' motion for a declaration that Federal owes the class plaintiffs the sum of $157,217.50 as post-judgment interest on the Judgment.

**SO ORDERED**.

October 18, 2018.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE